Day, J.
 

 This was an action upon breach of a contract to recover in the following respects: (1) $5,000 for liquidated damages. (2) $325 balance due for February rent. (3) $166.67 for use of restaurant and equipment. (4) $211.39 for broken equipment.
 

 The plaintiff in error at the trial waived the claim of $211.39 for breakage, and the defendant in error admitted the items of $325 for the balance of the February rent, and $166.67 for the use of equipment, so that the only question unsolved becomes that of the $5,000 item, the paramount ques
 
 *47
 
 tion being whether the $5,000 item provided for in the contract is to be regarded as liquidated damages or as a penalty. The three paragraphs of the contract referring to the subject are the third, eighth, and ninth, which provide as follows:
 

 “Third. It is agreed by the parties hereto that the said restaurant business as now conducted by the party of the first part is in a prosperous condition, that the average gross weekly income therefrom is seven hundred fifty dollars ($750), and that the said business, including the good will, is worth five thousand dollars ($5,000) over and above the value of the fixtures, equipment, and lease, and party of the second part agrees that said restaurant business shall be conducted in such a careful and businesslike way that the average gross receipts for the week shall continue to be at least seven hundred fifty dollars ($750) during the life of this contract.
 

 “Eighth. Should the gross weekly income from said restaurant run below the sum of seven hundred fifty dollars ($750) for a period of four (4) weeks in succession, or should the average gross weekly income for a period of four (4) weeks in succession be less than seven hundred fifty dollars ($750), then, and in that event, the party of the first part, at his option, shall be entitled to take immediate possession of said restaurant and equipment and fixtures, and to declare the provisions of this contract granting the use of said equipment, fixtures, lease, and good will to the party of the second part at an end, and shall be entitled to operate or dispose of said restaurant in such manner as he sees fit.
 
 *48
 
 Should, strikes or other industrial conditions render it extremely difficult or impossible to secure necessary supplies for said restaurant, then and in that event the said weekly income of seven hundred fifty dollars ($750) guaranteed herein shall be reduced to four hundred dollars ($400) per week during the existence of said conditions.
 

 “Ninth. 'Should party of the second part abandon or discontinue operating said restaurant, either voluntarily or by order of the authorities for violation of law, or, should the receipts fall below the sums provided in Section 8 of this contract for the periods mentioned and under the conditions set forth in said Section 8, then and in that event the value of the said restaurant shall be considered as being only the actual value of the equipment, fixtures, and lease, and party of the first part shall then be entitled to receive from party of the second part the sum of five thousand dollars ($5,000), which said sum is hereby agreed to be the amount of the loss sustained to the business by reason of the loss of trade permitted by party of the second part, and in addition thereto party of the first part shall be entitled to immediate permanent possession of said restaurant.”
 

 The rule as to whether damages provided for in a contract will be regarded as liquidated, or as a penalty, has heretofore been stated in this court.
 
 Doan
 
 v.
 
 Rogan,
 
 79 Ohio St., 372, 87 N. E., 263;
 
 Norpac Realty Co.
 
 v.
 
 Schackne,
 
 107 Ohio St., 425, 140 N. E., 480, and
 
 Miller
 
 v.
 
 Blochberger,
 
 111 Ohio St., 798, 146 N. E., 206. See, also, in this connection, Ku
 
 nkel & Jordan
 
 v.
 
 Wherry,
 
 189 Pa., 198, 201, 202, 42 A., 112, 69 Am. St. Rep., 802.
 

 
 *49
 
 From the foregoing authorities it seems to be quite generally established that liquidated damages exist in a contract when (1) the damages would be uncertain as to amount and difficult of proof; (2) when the contract as a whole is not so manifestly unreasonable and disproportionate as to justify the conclusion that it does not express the true intention of the parties; and (3) when the contract is consistent with the conclusion that it was the intention of the parties that the damages in the amount stated should follow the breach.
 

 Applying these principles to the case at’ bar, this record discloses that Jones sold to Stevens a good, going and profitable restaurant business, one from which the defendant, Stevens, in the first month after the sale, made a profit of more than $500, the amount taken in by him in excess of the cost of food, gas, light, help, rent of $375, and $166.66 for the use of the business and equipment. From this profitable stage, existing at the time 'Stevens took over the restaurant from Jones, the income in a few months dropped so materially that, not only was there no profit, but Stevens defaulted in the rent, and in the payment to Jones for the use of the equipment, and the average gross receipts per week dropped far below $750 provided for in the contract, whereupon Stevens voluntarily surrendered the premises and restaurant to Jones. A variety of reasons are given for this falling off of the business, and the consequent loss of the good will of the restaurant, Stevens claiming that a general business depres-. sion, and low gas pressure, which made it impossible to properly heat the premises, drove his cus
 
 *50
 
 tomers elsewhere, while Jones, on his part, claimed that bad management, lack of proper service, inattention to business, and general mismanagement caused the falling off of business and the consequent loss of good will.
 

 The defendant’s claims that a general depression and weather conditions that made it difficult to heat the premises caused the falling off in the business are not sufficient to excuse compliance with the contract in question: (1) Because the parties must be considered to have contracted with reference to some of the very conditions that afterwards developed, a clause in the contract providing, “Said restaurant business shall be conducted in such a careful and businesslike way that the average gross receipts for the week shall continue to be at least $750.” (2) Because difficulty of performance is not necessarily an excuse for nonperformance.
 

 In the case of
 
 New York Coal Co.
 
 v.
 
 New Pittsburgh Coal Co.,
 
 86 Ohio St., 140, 99 N. E., 198, there was an action to recover on the terms of the lease for royalty for mining a minimum amount of coal. The defense was as to claimed conditions beyond the control of the lessee. The court held:
 

 “The burden rests upon the defendant to show that it was prevented from mining and removing the minimum tonnage by a cause beyond its control, within the meaning of the saving clause in the lease, in order to relieve itself from liability for the specified minimum royalty.”
 

 And the court in its opinion, at page 176, 99 N. E., 207, said:
 

 “The specified causes in the clause in question,
 
 *51
 
 viz., strikes, lockouts, fires, floods and lack of transportation facilities, are well understood and have well-defined meaning’s. So that if the lessee desired to include other matters, particularly such as are contended for here, he should have taken the precaution to have them particularly mentioned in the contract, otherwise he will be held to have waived them.”
 

 Applying this doctrine it would have been entirely possible to have inserted in this contract a' saving clause in regard to depreciation in business conditions or a shortage in gas supply, which would have excused Stevens from performance. The clause with reference to inability' to secure necessary supplies is not sufficient to meet the situation shown by this record. Stevens contracted to maintain this business in such a condition that its gross income for any four weeks would not fall below $750 per week. Not only did he fail to do this, but all the trade fell off in such an amount that, by his own admission, he practically abandoned the restaurant and turned it back to Jones. There was, therefore, such a breach as provided for in the ninth paragraph of the contract. This being the unfortunate condition that confronted the parties, what were their relative rights under the contract? Both were experienced restaurant men, of full age, under no disability, and able to contract. Did they not bring themselves within the rule adopted by this court in
 
 Knox Rock Blasting Co.
 
 v.
 
 Grafton Stone Co.,
 
 64 Ohio St., 361, 367, 60 N. E., 563, from the case of
 
 Dwinel
 
 v.
 
 Brown,
 
 54 Me., 468, as follows:
 

 “The parties themselves best know what their
 
 *52
 
 expectations are in regard to the advantages of their undertaking, and the damages attendant on its failure, and when they have mutually agreed upon the amount of such damages in good faith, and without illegality, it is as much the duty of the court to enforce that agreement as it is the other provisions of the contract. * * * In construing the other parts of a contract, so in giving construction to the stipulation concerning damages, the intention of the parties governs. * * * It is the province of the court to uphold existing contracts, not to make new ones. It is not for the court to sit in judgment upon the wisdom or folly of the parties in making a contract, when their intention is clearly expressed, and there is no fraud or illegality. * * * The interests of the public are quite as likely to be subserved in maintaining the inviolability of contracts as they are in contriving Avays and means to make a contract mean what is not apparent upon the face of it, to save a party from some conjectural inequity growing out of his supposed inadvertence or' improvidence.”
 

 Are these damages capable of accurate measurement or are they uncertain and difficult of proof? They relate to the loss of good Avill of a business, which is a most valuable asset, yet intangible and most difficult of measurement. Many definitions of good will have been given, but a simple and understandable one is: “The ‘good will’ of a business is merely the hope grounded on a probability, the probability that the old customers will resort to the old stand.”
 
 Didlake
 
 v.
 
 Roden Grocery Co.,
 
 160 Ala., 484, 49
 
 So.,
 
 384, 22 L. R. A., (N. S.), 907, 18 Ann. Cas., 430.
 

 
 *53
 
 In
 
 Morgan
 
 v.
 
 Perhamus,
 
 36 Ohio St., 517, 38 Am. Rep., 607, this court described it as follows:
 

 “The good will of a business is a. species of personal property,” and, “ ‘although inseparable from business, is an appreciable part of the assets of a concern, both in fact and in the estimation of a court of equity. * * * It is a portion of the subject-matter which produces profits.’ ”
 

 That good will has a real value no one denies, but only those who are versed in the requirements, opportunities, and exigencies of a business are qualified with any accuracy to estimate the value of its good will. This the parties to this contract, both experienced restaurant men, sought to do, and that value was fixed at the sum of $5,000. The contract as a whole does not show that the amount they fixed was so unreasonable and disproportionate as to justify the conclusion that it did not express the true intention of the parties at the time it was made, for did not Stevens make a profit the first month of over $500? Was it not a going, paying, concern that was turned over by Jones to Stevens? The business appears to have been one that was highly profitable under proper management, but once its trade or good will was gone the nature of the business was such that it was difficult to re-establish it.
 

 Jones was liable for the rent of these premises in the sum of $4,500 a year. This Stevens in the contract agreed to pay, but failed to do. In addition to that Stevens further agreed to pay $2,000 a year for the use of the restaurant and its equipment, and also to return the equipment in the condition in which it was received. This contract was
 
 *54
 
 breached by Stevens, and as a result thereof Jones lost $2,000 per year for the use of the restaurant and equipment from the time of Stevens’ default to the end of the term of the lease. J ones also lost the good will of the business, which, when Stevens went into possession, was showing a profit of more than $500 per month after payment of all necessary expenses, the rent, and for the use of the restaurant, equipment, etc. A further loss was sustained by Jones in his effort to restore the restaurant to its former paying position, after Stevens had abandoned the restaurant and surrendered possession on March 1, 1921, and Jones was also liable on his lease to the end of its term, at the rate of $4,500 a year, which lease did not expire until March 1, 1924. All of these items indicate a financial loss to Jones in amounts, which show that the agreement of the parties to the contract to fix the sum of liquidated damages for the loss of good will at $5,000 was not unconscionable.
 

 It may be suggested that by reason of enumeration of the above items it is thereby shown that these damages are susceptible of direct proof. This by no means follows, for the reason that the action is one for the loss of the good will of the business, a species of property which, as. indicated above, is in itself difficult of exact measurement, and accomplished usually only by those Avho are skilled, experienced, and expert in fixing the value thereof. May it not be said that those who have spent years in a business are better qualified to fix this value than others? Such individuals were the very persons to the contract in question, and therefore we think that this contract is consistent AAfith the
 
 *55
 
 conclusion that the amount of damages for the loss of the good will fixed by the parties was not unconscionable, and that it was the intention of the parties themselves that the damages indicated in the contract should follow as a measure of breach thereof. In support of this view attention is called to the case of
 
 Leary
 
 v. Laflin, 101 Mass., 334, involving a contract not dissimilar from that in the case at bar:
 

 “In an action on a bond for the payment of $1,000, ‘as liquidated damages,’ to the lessor of a stable, and the good will of its business, if the lessee should not keep the stable during the demised term in manner as satisfactory to all reasonable parties as the lessor had previously done, and at the end of the term surrender ‘said demised premises and good will in as good repute and run of custom as now thereto pertain,’ held, that the sum named was to be considered liquidated damages, and not a penalty.”
 

 In the case of
 
 Guerin
 
 v.
 
 Stacey,
 
 175 Mass., 595, 56 N. E., 892, it was held:
 

 “A lessee gave a bond to his sublessee conditioned that, if through the acts of the former the lease should be terminated or the sublessee ousted before the expiration of the term, the obligation should remain in force and the obligor should pay the obligee the sum of $2,500 as liquidated damages. The sum named was also the penalty of the bond; and it was implied that if the sublessee should enjoy his term undisturbed the obligation should be void. The bond was dated August 17, 1894. The lease would have expired in July, 1898. It was terminated in July,
 
 *56
 
 1897, and the sublessee, finding that he would be recognized by the owner only as a monthly tenant, gave notice and left the premises on October 22, 1897. Held, in an action for a breach of the bond, that the sum named was liquidated damages and not a penalty.”
 

 Chief Justice Holmes, delivering the opinion of the court, uses this apt language at page 597, 56 N. E., 892:
 

 “There is no doubt that a sum which is to be paid upon the breach of a primary undertaking may be treated as a penalty in some cases, notwithstanding the fact that it is called liquidated damages in the contract. The typical case is where it secures several promises of varying importance, one or more of which is for the payment of a much smaller sum of money.
 
 Fisk
 
 v.
 
 Gray,
 
 11 Allen, 132.
 
 Wallis
 
 v.
 
 Smith,
 
 21 Ch. D., 243, 257, 268, 275. But we heartily agree with the Court of Appeals in England, that so far as precedent permits, the proper course is to enforce contracts according to their plain meaning, and not to undertake to be wiser than the parties, and therefore that, in general, when parties say that a sum is payable as liquidated-damages, they will be taken to mean what they say and will be held to their word.
 
 Wallis
 
 v.
 
 Smith,
 
 21 Ch. D., 243.
 
 Atkyns
 
 v.
 
 Kinnier,
 
 4 Exch., 776, 783. In the language of Baron Parke in the case last cited, ‘If there be a contract consisting of one or more stipulations, the breach of which cannot be measured,’ as in theory of law the damage caused by a failure to pay money can be, ‘then the parties must be taken to have meant that the sum agreed on was to be liquidated damages and not a penalty. ’ ’ ’
 

 
 *57
 
 In the case of
 
 Peabody
 
 v.
 
 Richard Realty Co.,
 
 69 Misc. Rep., 582, 125 N. Y. S., 349, it was held:
 

 “In behalf of a lessee, to whom the lease, for 10 years, turned over absolute control of some 20 pieces of property, including 18 stores and a hotel, with several thousand dollars worth of furniture, to be returned in good condition, at a rental of $2,666 per month, besides the payment of taxes and insurance, and the making of repairs, a surety company executed a bond to the lessor, providing that, if the lessee failed to perform any of the terms of the lease and was dispossessed by reason thereof, the surety company should pay $10,000 to the lessor as stipulated and liquidated damages, and not as a penalty. Held that, in view of the damages which could be inflicted by mismanagément or carelessness of the lessee, damages were not easily ascertainable on a mere basis of monthly rental, and, no unconscionable advantage being given, the provision for liquidated damages would be enforced.”
 

 This case discusses the principle of liquidated damages provided for in contracts, amd cites many authorities in support of the conclusions reached, and it was affirmed by the Supreme Court of New York, 145 App. Div., 903, 129 N. Y. S., 1139.
 

 We are not unmindful of the rule that where it is doubtful whether a provision should be deemed as for a penalty, or as one for liquidated damages, tbe court should incline to regard it as a penalty, yet, where there is difficulty in assessing the actual damages, and the plain intention of the parties as evidenced by the contract indicates that damages in the amount agreed upon should follow the
 
 *58
 
 breach, and the sum is not so manifestly unconscionable, unreasonable, and disproportionate as to justify the contrary conclusion as to their intention, it follows, as a matter of law, that the amount in question should be construed as liquidated damages and not as a penalty.
 

 If private contracts entered into by persons under no disability, and in the absence of any fraud, are to be sustained, the rights of the parties to thus contract must be upheld, even though one or both parties thereto sustain financial loss. The law cannot exercise supervision over the actions of people who enter into contractual relations, and if the contract possess no disabilities the parties must be regarded as bound by the terms of their contract. It-does not lie within the province of the court to enter the domain of the right of parties to contract, and to grant relief because unfortunate results may have followed the execution of such contracts.
 

 Entertaining this view, it becomes our duty to reverse the judgment of the Court of Appeals, and affirm the conclusion of the court of common pleas.
 

 Judgment of the Court of Appeals
 
 reversed,
 
 and that of the common pleas affirmed.
 

 Marshall, C. J., Jones, Matthias, Allen, Kinkade and Robinson, JJ., concur.