CAD CAM, INC., APPELLANT, *v.* UNDERWOOD, APPELLEE.

(No. 9858—Decided March 10, 1987.)

*David A. Chicarelli,* for appellant.
*David F. Rudwall,* for appellee.

FAIN, J. Cad Cam, Inc. seeks to enforce Section 8 of its employment contract with Edwin Underwood, its employee. From the trial court's judgment in favor of Underwood, Cad Cam appeals.

Section 8 of the employment contract reads as follows:

"Employee acknowledges that by virtue of his employment with Employer, he will be acquiring certain unique training, skills, and experience. In consideration therefor, and only if Employee becomes employed by another Employer whose [*sic*] services uses, manufactures, or contemplates the service, use or manufacture of computer-aided design equipment or facilities, Employee agrees upon termination of his employment with Employer to pay to Employer the sum of one half of his annual based salary which shall be due within 30 days after the effective date of termination and may be offset by Employer against any amount then due and owing to Employee."

Cad Cam sought judgment for $9,500, being one half of Underwood's annual salary, based on Section 8 of the contract.

It is undisputed that Underwood signed the contract, and that Cad Cam performed its obligations under the contract. It is undisputed that Underwood, at his initiative, left Cad Cam's employ and began immediately to work for "another [e]mployer whose [*sic*] services uses, manufactures, or contemplates the service, use or manufacture of computer-aided design equipment or facilities," within the contemplation of Section 8.

Underwood claimed that Section 8 of his contract constituted an illegal restraint of trade and a penalty clause, and was unenforceable. The trial court held that Section 8 was unenforceable because "it is blatantly a penalty clause and has no relationship whatsoever to liquidated damages."

Cad Cam sets forth four assignments of error. We will consider its third assignment of error first, because that involves the proper construction of the contract provision relied upon, which is central to the resolution of this appeal.

Cad Cam's third assignment of error is as follows:

"The trial court erred in construing the reimbursement provision as a penalty because that clause is a valid liquidated damages provision."

The test for determining whether a contract provision is a liquidated damages provision or a penalty has been articulated as follows:

"Where the parties have agreed on the amount of damages, ascertained by estimation and adjustment, and have expressed this agreement in clear and unambiguous terms, the amount so fixed should be treated as liquidated damages and not as a penalty, if the damages would be (1) uncertain as to amount and difficult of proof, and if (2) the contract as a whole is not so manifestly unconscionable, unreasonable, and disproportionate in amount as to justify the conclusion that it does not express the true intention of the parties, and if (3) the contract is consistent with the conclusion that it was the intention of the parties that damages in the amount stated should follow the breach thereof." *Jones* v. *Stevens* (1925), 112 Ohio St. 43, 146 N.E. 894, paragraph two of the syllabus, quoted, approved and followed in *Samson Sales, Inc.* v. *Honeywell, Inc.* (1984), 12 Ohio St. 3d 27, 29, 12 OBR 23, 25, 465 N.E. 2d 392, 394.

In applying this test, a first point of departure is to determine for what injury the specified damages are intended to compensate. Cad Cam argues that the $9,500 is intended to compensate it for its expenses in training the employee, and for the bonuses that it paid to its employee. The difficulty with this analysis of the injury for which the specified damages are intended to compensate is that Cad Cam will have suffered the expenses of training its employee and having paid its employee bonuses in every instance in which the employee leaves Cad Cam's employ, and yet the damages

provision is not triggered in every such instance — it is only triggered in those instances in which the former employee is hired by a competitor within the industry. This strongly suggests that the injury for which Section 8 compensates is not the training expenses' and bonuses, but is rather the adverse impact, if any, that the hiring of Cad Cam's employee by a competitor would have upon Cad Cam's business.

Opposed to this conclusion is testimony by Cad Cam's president and majority stockholder that Cad Cam wanted to be reimbursed for its employee's training, but only if that training were of benefit to him in subsequent employment in the industry; otherwise, no reimbursement would be paid. That is at least an argument in favor of linking, conceptually, the training expenses to the payment required by Section 8. Based on the whole record, however, we are not prepared to hold that the trial court was required to accept the foregoing rationale offered by Cad Cam as a primary rationale for Section 8, or even as a valid rationale for Section 8. There was evidence in the record that on at least one occasion the same witness had admitted, at a deposition, that one intention of Section 8 was "to advise and warn other companies that in the event they steal * * * [Cad Cam's] employee, they will have to make a token payment for those employees." That admission is more consistent with Section 8 being a penalty to secure enforcement of a covenant not to compete, than with Section 8 being a provision for reimbursing Cad Cam for the expenses of training its employee in the event of the employee's having derived some post-Cad Cam employment benefit from the training.

We conclude that the trial court could reasonably find, from this record, that the purpose of Section 8 was to ensure that Cad Cam's employee did not leave Cad Cam's employ and go to work for a competitor. In that event, the injury to Cad Cam would be the adverse impact, if any, that the hiring of the employee by Cad Cam's competitor would have upon Cad Cam's business.

The test articulated in *Jones* v. *Stevens, supra,* can now be applied in this case.

First, we must determine if the damages to Cad Cam's business resulting from the hiring of a former employee by a competitor were "uncertain as to amount and difficult of proof." It would seem that they would be. It will ordinarily be difficult to determine how much business has been lost to a competitor as a result of any single factor, since a customer's decision with whom to do business is potentially subject to many varied influences.

Second, we must determine if the contract is so manifestly unconscionable, unreasonable, and disproportionate in amount as to justify the conclusion that it does not express the true intent of the parties. Here we conclude that the trial court could reasonably have found that the contract was manifestly unconscionable, unreasonable, and disproportionate in amount.

In *Jones* v. *Stevens, supra,* the putative penalty went to the heart of the entire contractual undertaking (in a contract to operate a restaurant for a fixed period of time, the putative penalty became due if the operation failed to generate a stipulated gross income). Similarly, in *Samson Sales, Inc.* v. *Honeywell, Inc., supra,* in which the *Jones* test was approved and followed, the putative penalty went to the heart of the entire contractual undertaking (in a contract to provide a burglar alarm system, the putative penalty became due if the burglar alarm failed to achieve its essential purpose). The test

employed in both *Jones* and *Samson Sales* is, therefore, whether the contract as a whole was manifestly unconscionable, unreasonable and disproportionate in amount.

In cases in which the putative penalty is triggered by a breach other than a failure of the entire contractual undertaking, the test that has been used is similar, but somewhat different. Thus, in *Miller* v. *Blockberger* (1924), 111 Ohio St. 798, 807-809, 146 N.E. 206, 208-209, in which a putative penalty was triggered by any one breach of two different contractual undertakings, the court separately weighed the specified damages against each contractual undertaking to see if there was a reasonable relationship between them.

In the case we decide today, there is a specific contractual undertaking — not to become subsequently employed by a competitor — that corresponds with the specified damages, $9,500.

There was sufficient evidence in the record from which the trial court could conclude that the $9,500 damages stipulated in the contract were not reasonably proportionate to any injury to Cad Cam likely to result from Underwood's subsequent employment by a competitor. The training Underwood required at Cad Cam in order to use the Computervision system (which was similar to the system Underwood used when subsequently employed by Cad Cam's competitor) was completed in Underwood's first week on the job, so that it would not have taken Cad Cam's competitor very long to have trained a newly hired employee with comparable innate ability, even if the newly hired employee had not had Underwood's background in the Computervision system. In any event, Underwood did require new training by his subsequent employer. There are many software systems to facilitate the work done by both Cad Cam and its competitor, so that the Computervision and Intergraph system learned by Underwood at Cad Cam were not valuable trade secrets of Cad Cam. In any event, Underwood did not use the Computervision or Intergraph system in his new employment. Finally, the scope of Underwood's job at Cad Cam was essentially limited to copying drawings, not a task in which one would expect there to be much in the way of secret proprietary knowledge of much value to Cad Cam.

All of the foregoing evidence would tend to support the trial court's conclusion that the potential for any adverse impact upon Cad Cam's business resulting from Underwood's going to work for a competitor was quite limited. In that respect, this case is distinguishable from cases involving a key employee with secret technical knowledge essential to his employer's competitive standing within a newly emerging, "high tech" industry (see *Ganguly* v. *Mead Digital Systems* [Sept. 20, 1984], Montgomery App. No. 8225, unreported), or involving an employee with intimate and detailed knowledge of his former employer's pricing structure, who uses that knowledge to embarrass his former employer with its customers (see *Thompson's Supply Co.* v. *Vivio* [Sept. 26, 1986], Montgomery App. No. 9562, unreported).

The fundamental test for whether a contractual provision is a liquidated damages or a penalty provision has been recently expressed as follows:

" * * * [R]easonable compensation for actual damages is the legitimate objective of * * * liquidated damage provisions and where the amount specified is manifestly inequitable and unrealistic, courts will ordinarily regard it as a penalty. * * *" *Samson Sales, Inc.* v. *Honeywell, Inc., supra,* at 28, 12 OBR at 24, 465 N.E. 2d at 393-394.

Since there is evidence in the rec-

ord from which the trial court could properly have concluded that any actual damages likely to be sustained by Cad Cam as a result of Underwood's having gone to work for a competitor were negligible, the specification in Section 8 of the contract of one half of Underwood's annual compensation, or $9,500, as the damages for his breach would seem to be unrealistically out of proportion to the actual damages likely to be sustained by Cad Cam.

In summary, there was sufficient evidence in the record from which the trial court could conclude that Section 8 of the contract was intended as a penalty clause, rather than as a liquidated damages provision. Accordingly, Cad Cam's third assignment of error is without merit.

Armed with the conclusion that the contract provision upon which Cad Cam relies was properly found by the trial court to be a penalty clause rather than a liquidated damages provision, it is possible to dispose of Cad Cam's first and second assignments of error rather simply.

Cad Cam's first assignment of error is as follows:

"The trial court erred in not enforcing the employment agreement, because the agreement for reimbursement is a valid and reasonable covenant not to compete."

Even if the trial court had found that the covenant not to compete intended to be enforced by Section 8 had reasonable geographical and temporal limits, it could still have properly found that the $9,500 forfeiture provision enforcing Section 8 was a penalty clause, and therefore unenforceable, rather than a liquidated damages provision. Cad Cam's only available remedy would then be injunctive relief, which Cad Cam has not sought, or actual damages, which Cad Cam has failed to prove.

In any event, the covenant not to compete intended to be enforced by Section 8 is unlimited both in area and in time. We have found no cases upholding as reasonable a covenant not to compete unlimited as to both geography and time. It would take an extraordinary showing to establish that an unlimited restriction against competition, anywhere in the world and at any time in the future, was reasonably necessary to protect the covenantee's legitimate business interests, and no such showing has been made.

Cad Cam's first assignment of error is without merit.

Cad Cam's second assignment of error is as follows:

The trial court erred in not enforcing the reimbursement provision, because the reimbursement provision is a valid promise exchanged for fair consideration and is enforceable independent of the rest of the agreement."

If the provision upon which Cad Cam relies was not supported by fair consideration, the lack of fair consideration would have been an independent ground for declining to enforce the provision. It is unnecessary to reach that issue, however, since we conclude that Section 8 was properly found by the trial court to be a penalty clause, intended to compel Underwood's adherence to the non-competition restriction by the deterrent effect of its punitive forfeiture provision, disproportionate to any injury likely to have been done to Cad Cam's business as a result of Underwood's going to work for a competitor.

Cad Cam's second assignment of error is without merit.

There remains Cad Cam's fourth assignment of error, which is as follows:

"The trial court erred in dismissing the claim because even if the agreement was defective the defect should have been corrected and relief awarded."

Cad Cam cites *Raimonde* v. *Van Vlerah* (1975), 42 Ohio St. 2d 21, 71 O.O. 2d 12, 325 N.E. 2d 544, for the proposition that even if the contractual provision upon which it relies is contrary to public policy, and therefore not enforceable as written, the courts should nevertheless enforce it to whatever extent would not contravene public policy.

Before *Raimonde,* there was authority for the proposition that a court would not rewrite the scope of the restrictions contained in a covenant not to compete when the court found that those restrictions were unreasonably broad in their geographic or temporal scope. *Raimonde* overruled the earlier authority, holding that "a trial court may enforce a covenant 'to the extent necessary to protect an employer's legitimate interests,' * * *." *Raimonde, supra,* at 28, 71 O.O. 2d at 16, 325 N.E. 2d at 548.

Cad Cam would have us extend the scope of the holding in *Raimonde* to embrace the situation in which a trial court finds a damages provision in a contract to be a penalty provision. The trial court would be required to rewrite the contract to provide for liquidated damages that would be reasonably related to the injury likely to result from breach, and not punitive in amount.

We decline to extend *Raimonde* in the manner that Cad Cam suggests.

It is one thing for a court to determine whether the application of a covenant not to compete to a particular fact pattern is reasonably necessary to protect an employer's legitimate interests; it is quite another for a court to fashion a liquidated damages provision that would be reasonably related to any injury likely to result from a breach. Even extended in the manner suggested by Cad Cam, *Raimonde* would not require that a trial court rewrite a contract damages provision to cover all future cases that might be likely to arise. So extended, *Raimonde* would merely require that the trial court determine whether application of the stipulated damages provision to the facts of the particular case under consideration would be reasonable. The latter is more akin to the adjudicative function; the former would employ the trial court as a contract draftsman, or private legislator, attempting to draw a contractual provision that would reasonably provide for all possible cases of breach.

If Cad Cam is asking that the trial court be required to rewrite Section 8 to provide for a reasonable scheme of liquidated damages to cover all future cases of breach, then we conclude that the trial court would be required to wander too far afield from its ordinary adjudicative function. On the other hand, if Cad Cam is asking only that the trial court be required to determine what award of damages would be reasonable given the facts of this particular case, then we are unable to differentiate that exercise from a trial court's ordinary determination and award of compensatory damages.

We do not quarrel with the proposition that a plaintiff may recover proven damages for a breach of contract, even if the damages stipulated in the contract itself are held to be unenforceable as a penalty. Cad Cam's difficulty in this case is that it has not offered sufficient proof of the adverse impact upon its business of Underwood's having left his employment in order to work for a competitor. The trial court was entitled, on the record in this case, to conclude that there had been a failure to prove any injury at all accruing to Cad Cam as a result of Underwood's having gone to work for a competitor. Therefore, the trial court's failure to award damages was not error.

Cad Cam's fourth assignment of error is without merit.

In his citation of supplemental authority, filed herein on February 2, 1987, Underwood suggests that an award of attorney fees pursuant to App. R. 23 is appropriate. Such an award of fees would require us to hold that Cad Cam's appeal is frivolous. We are not prepared to so hold.

A determination of whether a contractual damages provision is a liquidated damages provision or a penalty is a determination that must be made on a case-by-case basis. It necessarily involves analysis of the facts of the particular case. While we have not found the determination in this case to be especially difficult, we have not found Cad Cam's position, that the provision in question should be deemed to be a liquidated damages provision, to be so unarguable as to be frivolous. Since that has been the central question necessary to resolve this appeal, it follows that Cad Cam's appeal, as a whole, has not been frivolous.

All of Cad Cam's assignments of error being without merit the judgment below is affirmed.

*Judgment affirmed.*

WILSON and WOLFF, JJ., concur.