[Cite as *Pacetti's Apothecary, Inc. v. Rebound Bracing & Pain Solutions, L.L.C.*, 2023-Ohio-93.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY

| | |
|---|---|
| PACETTI'S APOTHECARY, INC. dba MEDICINE SHOPPE, et al. | : |
| | : |
| | : C.A. No. 2022-CA-28 |
| Appellants | : |
| | : Trial Court Case No. 2021 CV 0415 |
| v. | : |
| | : (Civil Appeal from Common Pleas |
| REBOUND BRACING AND PAIN SOLUTIONS, LLC, et al. | : Court) |
| | : |
| | : |
| Appellees | |

. . . . . . . . . . .

O P I N I O N

Rendered on January 13, 2023

. . . . . . . . . . .

JOHN A. FISCHER, Attorney for Appellants

DAVID BOCKRATH c/o Rebound Bracing and Pain Solutions, LLC, Appellees, Pro Se

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Plaintiffs-Appellants, Pacetti's Apothecary, Inc. dba Medicine Shoppe and Cindi Pacetti (collectively, "Pacetti") appeal from a trial court judgment awarding them $94,456.50 in damages against Defendant-Appellee, Rebound Bracing and Pain Solutions, LLC ("Rebound").

{¶ 2} According to Pacetti, the trial court erred in finding that a late fee provision in the parties' contract was a penalty instead of being enforceable as liquidated damages. Pacetti further contends that the court erred in failing to hold Defendant-Appellee Richard Bockrath personally liable for the damages. Rebound and Bockrath failed to file a brief.

{¶ 3} After reviewing the record, we conclude that the trial court did not err in finding the late fee provision unenforceable as a penalty. Under the established test for resolving this issue, Pacetti's damages were not uncertain as to amount or difficult to prove. The trial court correctly found no relationship between the late fee provision and Pacetti's damages.

{¶ 4} The court also did not err in refusing to pierce the corporate veil. The court correctly found insufficient evidence that Bockrath exercised control over Rebound in such a manner as to commit fraud, an illegal act, or a similarly unlawful act. Accordingly, the judgment of the trial court will be affirmed.

I. Facts and Court of Proceedings

{¶ 5} On August 30, 2021, Pacetti filed a complaint for breach of contract and unjust enrichment against Rebound and Bockrath. The amount claimed included $50,000 on a promissory note, $10,000 in interest on the note, and a late fee of 0.5% (or $250) on the principal amount for each day the amount due was unpaid. In addition, Pacetti requested $32,456.50 in unpaid billing fees. Pacetti also asked for attorney fees and the costs of bringing the action.

{¶ 6} Service was made on Rebound and Bockrath, but they failed to either appear

in the action or file answers to the complaint. As a result, on October 5, 2021, Pacetti filed a motion for default judgment. The court referred the case to a magistrate, who held a default judgment and damages hearing on January 10, 2022. Cindi Pacetti testified at the hearing and presented the court with two exhibits, including the promissory note attached to the complaint. Bockrath did not appear for the hearing.

{¶ 7} Ms. Pacetti testified that she is the owner of Pacetti's Apothecary, which does business as Medicine Shoppe. The Medicine Shoppe is an independent retail pharmacy that also sells durable medical equipment. Besides the retail business, Pacetti has various exclusive contracts with insurance companies for billing durable medical equipment. Transcript of Default Judgment Hearing ("Tr.") (Jan. 10, 2022), p. 2-3. Bockrath owns Rebound, which is in the business of providing durable medical equipment. A number of years ago, Bockrath and Pacetti entered into an agreement, pursuant to which Pacetti would perform insurance billing services for Rebound and would receive a 20% commission for its efforts. *Id.* at p. 4 and 12-13.

{¶ 8} During this relationship, Bockrath, on occasion, asked Pacetti to forego its commission. Typically, this occurred when Bockrath needed money for payroll or needed to buy medical equipment. *Id.* On one occasion, Bockrath asked Pacetti to refrain from collecting the commission because he needed money for his daughter's wedding. *Id.* at p. 13. At the time of the damages hearing in January 2021, the total amount owed to Pacetti was $32,456.50. *Id.* at p. 13-15.

{¶ 9} A separate matter involved a $50,000 promissory note that Pacetti's Apothecary and Rebound entered into on September 1, 2020. This was done at

Bockrath's request, because he wanted to purchase more durable medical equipment to keep his business going. *Id.* at p. 5-6 and Exhibit 1. The note required repayment of the entire amount of the loan by December 1, 2020, and it imposed $10,000 as interest charges for the three-month duration of the loan. As a result, $60,000 was due on December 1, 2020. In addition, the note stated that:

> FAILURE TO PAY[:] If the Lender has not received the full amount of the payment after [December 1, 2020], the Borrower shall owe a late payment fee to the Lender of 1/2 % of the principal amount each day the amount due is late.

Ex. 1 (Promissory Note), p. 1.

{¶ 10} The "Lender" on the Loan was Pacetti's Apothecary, Inc., and the "Borrower" was Rebound Bracing and Pain Solutions, LLC. *Id.* at p. 2. Ms. Pacetti signed the note on Apothecary's behalf, and Bockrath signed it on Rebound's behalf. *Id.*; *see also* Tr. at p. 6. The note further provided that if any payment obligation under the loan was late, the Borrower would pay collection costs, including attorney fees and costs.

{¶ 11} After the note was signed, Ms. Pacetti gave Bockrath a $50,000 check, and he accepted the money. *Id.* at p. 7 and Ex. 1 at p. 3. Bockrath never made any payment on the loan. As a result, Pacetti filed suit on August 30, 2021. Tr. at p. 7-8. At the time of the magistrate's hearing on January 10, 2022, 405 days had elapsed, and Pacetti stated that an additional $101,450 was owed, which represented ½% of $50,000 (or $250) per day times 405 days. *Id.* at p. 8-10. Pacetti had also incurred $2,000 in attorney fees. *Id.* at p. 10. As a result, Pacetti's total damages amounted to $195,706.50

($60,000 + $101,250 + $2,000 + 32,456.50 = $195,706.50).

{¶ 12} After hearing the evidence, the magistrate filed a decision on January 21, 2022, granting the default judgment and awarding Pacetti damages of $94,456.40. The magistrate found that Pacetti was entitled to the loan amount and interest (totaling $60,000), attorney fees of $2,000, and the billing amounts that had been deducted ($32,456.40).[1] Magistrate's Decision (Jan. 21, 2021), p. 4-6. However, the magistrate rejected the late fee amount of $101,250 due to insufficient evidence of a relation between the late fees and actual damages. *Id.* at p. 5.

{¶ 13} Pacetti filed timely objections to the magistrate's decision and also asked the court for permission to file supplemental objections after the transcript was completed. The court granted the motion, and Pacetti then filed supplemental objections on February 28, 2022. On April 1, 2022, the court issued a decision overruling the objections. First, the court agreed with the magistrate that Pacetti was not entitled to late fees because this amount was not intended to compensate Pacetti; instead, it was intended to punish Rebound. Decision and Judgment Entry (Apr. 1, 2022), p. 3-5. The court also rejected Pacetti's argument that Bockrath should be held personally responsible for the debt. The court noted that the complaint lacked any allegations about piercing the corporate veil and that Pacetti had also failed to offer any evidence in support of such a theory. As indicated, the court modified the amount for the billing fees from $32,456.40 to $32,456.50. In all other respects, the court adopted the magistrate's decision. *Id.* at p. 6-7. Pacetti then timely appealed from the court's judgment.

---

[1] The magistrate's stated billing amount was incorrect, and the trial court changed this in its decision overruling the objections. The actual billing amount was $32,456.50.

## II. Late Payment Fee

**{¶ 14}** Pacetti's first assignment of error states that:

> The Trial Court Erred by Finding That the Late Payment Fee Provided in the Contract Was Not Enforceable as Agreed Upon by Two Parties with Business Acumen.

**{¶ 15}** Under this assignment of error, Pacetti contends that the trial court erred in rejecting the late fee because late fees are permissible and the fee was not a penalty. According to Pacetti, the contract indicates that the parties contemplated a quick repayment, and the amount of its damages was uncertain and difficult to prove. Pacetti further argues that the amount of the fee was not unreasonable, as it was only .5% of the principal amount, and Bockrath, as a sophisticated businessperson, could not be deemed ignorant of the provision's effect.

**{¶ 16}** Before addressing the merits, we note that the trial court's decision was made after a referral to the magistrate, who held a hearing on damages. This is consistent with Civ.R. 55(A), which states that:

> If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper and shall when applicable accord a right of trial by jury to the parties.

{¶ 17} We have stressed that the trial court has discretion to require a hearing on damages and to require proof of damages " 'where the claim is based upon a written instrument, a contract where a specific amount is due or an account.' " *Day Air Credit Union, Inc. v. Davis*, 2021-Ohio-2054, 173 N.E.3d 1285 ¶ 19 (2d Dist.), quoting *Schroeder v. Gold*, 2d Dist. Montgomery No. 10052, 1987 WL 5627, *4 (Jan. 22, 1987). In *Davis*, we found that the trial court had abused its discretion by refusing to award a credit union $100 in late fees without holding a hearing. *See also Countrywide Home Loans Servicing v. Nichpor*, 136 Ohio St.3d 55, 2013-Ohio-2083, 990 N.E.2d 565, ¶ 5 ("[i]n order to enter a default judgment, a court must determine that no issues of law or fact exist and that the plaintiff is entitled to judgment").

{¶ 18} In reviewing a trial court's adoption of a magistrate's decision, we apply an " 'abuse of direction standard.' " *Holfinger v. Stonespring/Carespring, L.L.C.*, 2d Dist. Montgomery No. 27091, 2016-Ohio-7982, ¶ 33, quoting *State Farm Mut. Auto. Ins. Co. v. Fox*, 182 Ohio App.3d 17, 2009-Ohio-1965, 911 N.E.2d 339, ¶ 11 (2d Dist.). An abuse of discretion " 'implies that the court's attitude is unreasonable, arbitrary or unconscionable.' " (Citation omitted.) *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). "It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary." *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). "A decision is unreasonable if there is no sound reasoning process that would support that decision. It is not enough that the reviewing court, were it deciding the issue de novo, would not have

found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result." *Id.*

{¶ 19} Analysis of the appropriate standard of review can also involve whether a question of law is concerned. If issues pertain to questions of law, they are reviewed de novo, in which case "an appellate court may properly substitute its judgment for that of the trial court." *Castlebrook, Ltd. v. Dayton Properties Ltd. Partnership*, 78 Ohio App.3d 340, 346, 604 N.E.2d 808 (2d Dist.1992); *Payson v. Phipps*, 2d Dist. Miami No. 2021-CA-36, 2022-Ohio-1525, ¶ 36. *See also Davis*, 2021-Ohio-2054, 173 N.E.3d 1285, at ¶ 26 (in default judgment case, "[w]hether a trial court's determination of prejudgment and postjudgment interest is reviewed de novo or, instead, for an abuse of discretion depends on the statutory basis for the interest and whether questions of law are involved"). Regardless of the standard of review applied here, however, Pacetti's claim fails.

{¶ 20} "As a general rule, parties are free to enter into contracts that contain provisions which apportion damages in the event of default." *Lake Ridge Academy v. Carney*, 66 Ohio St.3d 376, 381, 613 N.E.2d 183 (1993). "In certain circumstances, however, complete freedom of contract is not permitted for public policy reasons. One such circumstance is when stipulated damages constitute a penalty. Because the sole purpose of contract damages is to compensate the nonbreaching party for losses suffered as a result of a breach, '[p]unitive damages are not recoverable for a breach of contract unless the conduct constituting the breach is also a tort for which punitive damages are recoverable.' " *Id.*, quoting 3 Restatement of the Law 2d, Contracts Section 355, at 154 (1981). "A punitive remedy is one that subjects the breaching party to a liability

'disproportionate to the damage which could have been anticipated from breach of the contract * * *.' " *Id.*, quoting 5 Williston on Contracts Section 776 at 668 (3d Ed.1961). "A penalty is designed to coerce performance by punishing nonperformance; its principal object is not compensation for the losses suffered by the nonbreaching party." *Id.*

{¶ 21} The Supreme Court of Ohio has established the following test to decide if a provision for stipulated damages is for liquidated damages or is punitive:

> Where the parties have agreed on the amount of damages, ascertained by estimation and adjustment, and have expressed this agreement in clear and unambiguous terms, the amount so fixed should be treated as liquidated damages and not as a penalty, if the damages would be (1) uncertain as to amount and difficult of proof, and if (2) the contract as a whole is not so manifestly unconscionable, unreasonable, and disproportionate in amount as to justify the conclusion that it does not express the true intention of the parties, and if (3) the contract is consistent with the conclusion that it was the intention of the parties that damages in the amount stated should follow the breach thereof.

*Samson Sales, Inc. v. Honeywell, Inc.*, 12 Ohio St.3d 27, 465 N.E.2d 392 (1984), syllabus, following *Jones v. Stevens*, 112 Ohio St. 43, 146 N.E. 894 (1925), paragraph two of the syllabus.

{¶ 22} In the case before us, Pacetti's claim fails on the first prong, which is that the damages would be "uncertain as to amount and difficult of proof." In this context, Pacetti argues that damages are uncertain because failure to repay the $60,000 would

require proof about various matters, such as how the failure would impact Pacetti's business, whether it would cause Pacetti to have trouble making payroll, and whether the failure would cause Pacetti to not be able to pay other debts. Appellant's Brief, p. 4-5. However, no evidence was presented on these points during the hearing. Furthermore, even if this were otherwise, Pacetti's situation is no different than that of any other person or entity who loans money to another. Repayment of a loaned amount is never a given, and this is a risk any lender takes.

{¶ 23} When the parties entered into the agreement in September 2020, the amount of damages was also easily ascertainable; the amount was the $50,000 loaned, plus the $10,000 in interest charged for three months' use of the money (in itself a very large sum). Therefore, the trial court did not err in concluding that the daily assessment of $250 in the event of breach was a penalty rather than liquidated damages. *Compare Indus. Waste Disposal v. Shone*, 2d Dist. Montgomery No. 12267, 1991 WL 47538, *3 (Mar. 27, 1991) (upholding a liquidated damages provision in a contract for waste disposal where testimony indicated that "damages were difficult to determine due to fluctuations in prices charged by the EPA and Montgomery County for the waste disposal"). Accordingly, the trial court did not err in finding a lack of relationship between the late fee and Pacetti's damages.

{¶ 24} We do disagree with the trial court's comment that the current amount of damages was more than double the amount borrowed. Decision and Judgment (Apr. 1, 2022), at p. 5. The Supreme Court of Ohio has specifically rejected a hindsight approach to the analysis. Instead, the court has stressed that "Ohio law requires a court, when

considering a liquidated-damages provision, to ' "examine it in light of what the parties knew at the time the contract was formed." ' " *Boone Coleman Constr., Inc. v. Piketon*, 145 Ohio St.3d 450, 2016-Ohio-628, 50 N.E.3d 502, ¶ 35, quoting *Jones*, 112 Ohio St. 43, 146 N.E. 894, at paragraph one of the syllabus. (Other citations omitted.) The trial court's error was harmless, however, given Pacetti's failure on the first prong of the liquidated damages analysis.

{¶ 25} Based on the preceding discussion, the first assignment of error is overruled.

### III. Piercing the Corporate Veil

{¶ 26} Pacetti's second assignment of error states that:

The Trial Court Erred by Failing to Hold Mr. Bockrath Personally Liable When He Failed to Respond in Any Way to Either the Complaint or the Motion for Default Judgment.

{¶ 27} Under this assignment of error, Pacetti contends that the trial court erred in failing to pierce the corporate veil, which would have allowed Bockrath to be held personally liable for Rebound's debt. According to Pacetti, Bockrath's failure to appear in the action deprived her of the ability to conduct discovery on this point. Pacetti notes, however, that some evidence was presented at the hearing to indicate that Bockrath was mingling corporate and personal finances. This is based on testimony that Bockrath sought money " 'because he needed to make payroll, his daughter's wedding was coming up, and that he needed the money.' " Appellant's Brief at p. 7, quoting the Magistrate's

Decision (Jan. 21, 2022), p. 2, fn.4.

{¶ 28} The complaint did not contain any allegations pertaining to piercing the corporate veil, nor was this matter discussed at the hearing that was conducted. In objecting to the magistrate's decision, Pacetti did claim that the magistrate had erred by failing to hold Bockrath personally liable. *See* Plaintiff's Objections to the Magistrate's Decision (Jan. 31, 2022), p. 1 and 5-6, and Plaintiff's Supplemental Objections to the Magistrate's Decision (Feb. 28, 2022), p. 8-9. The trial court overruled this objection, finding that the matter had not been raised in the complaint and no evidence or argument had been offered on this subject at the default judgment hearing. Decision and Judgment Entry (Apr. 1, 2022), at p. 6. The court further found that the record did not contain sufficient evidence to pierce the corporate veil. *Id.*

{¶ 29} Again, we review the trial court's adoption of a magistrate's decision for abuse of discretion. *Holfinger*, 2d Dist. Montgomery No. 27091, 2016-Ohio-7982, at ¶ 33. As previously noted, "most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary." *AAAA Ents.,* 50 Ohio St.3d at 161, 553 N.E.2d 597.

{¶ 30} Having reviewed the record, we cannot find that the trial court's decision lacked a sound reasoning process. The Supreme Court of Ohio has said that:

> The corporate form may be disregarded and individual shareholders
> held liable for wrongs committed by the corporation when (1) control over
> the corporation by those to be held liable was so complete that the
> corporation has no separate mind, will, or existence of its own, (2) control

over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong.

*Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.*, 67 Ohio St.3d 274, 275, 617 N.E.2d 1075 (1993).

{¶ 31} The court later modified this test by stating that "[t]o fulfill the second prong of the *Belvedere* test for piercing the corporate veil, the plaintiff must demonstrate that the defendant shareholder exercised control over the corporation in such a manner as to commit fraud, an illegal act, or a similarly unlawful act." *Dombroski v. WellPoint, Inc.*, 119 Ohio St.3d 506, 2008-Ohio-4827, 895 N.E.2d 538, syllabus.

{¶ 32} *Dombroski* involved a claim that was resolved on a Civ.R. 12(B)(6) motion to dismiss. *Id.* at ¶ 3. Thus, like here, the plaintiff had no ability to conduct discovery.

{¶ 33} In *Dombroski*, the plaintiff asserted that various insurers had acted in bad faith in denying coverage for a cochlear implant. *Id.* at ¶ 6-9. The issue before the court was resolution of a conflict among districts about whether *Belvedere* allowed " 'the corporate veil to be pierced in cases where control was exercised to commit unjust or inequitable acts that do not rise to the level of fraud or an illegal act.' " *Id.* at ¶ 1. For purposes of deciding the issue, the court assumed "as true the allegation that WellPoint and Anthem Insurance controlled the subsidiary corporations, Community and Anthem UM, to such a degree that those corporations had no separate minds, wills, or existences of their own." *Id.* at ¶ 19.

**{¶ 34}** In deciding to modify *Belvedere*, the court stressed its adherence "to the principle that limited shareholder liability is the rule * * * and piercing the corporate veil is the 'rare exception' that should only be 'applied in the case of fraud or certain other exceptional circumstances.' " *Id.* at ¶ 26, quoting *Dole Food Co. v. Patrickson*, 538 U.S. 468, 474, 475, 123 S.Ct. 1655, 155 L.Ed.2d 643 (2003). (Other citation omitted.) The court also emphasized that:

> Limiting piercing to cases in which the shareholders used their complete control over the corporate form to commit specific egregious acts is key to maintaining this balance. Were we to allow piercing every time a corporation under the complete control of a shareholder committed an unjust or inequitable act, virtually every close corporation could be pierced when sued, as nearly every lawsuit sets forth a form of unjust or inequitable action and close corporations are by definition controlled by an individual or small group of shareholders.

*Id.* at ¶ 27.

**{¶ 35}** The court therefore held that "to fulfill the second prong of the *Belvedere* test for piercing the corporate veil, the plaintiff must demonstrate that the defendant shareholder exercised control over the corporation in such a manner as to commit fraud, an illegal act, or a similarly unlawful act. Courts should apply this limited expansion cautiously toward the goal of piercing the corporate veil only in instances of extreme shareholder misconduct." *Id.* at ¶ 29. As applied to the case before it, the court found dismissal under Civ.R. 12(B)(6) appropriate because "[i]Insurer bad faith is a

straightforward tort, a basic example of unjust conduct; it does not represent the type of exceptional wrong that piercing is designed to remedy." *Id.*

**{¶ 36}** The same observation applies here. There were no allegations or testimony that would transform this situation into the kind of exceptional wrong that causes courts to pierce the corporate veil. The "Borrower Name" on the promissory note was "Rebound Bracing and Pain Services, LLC," and Ms. Pacetti and Bockrath both signed the note on behalf of their respective corporate entities. The check stub for the $50,000 payment also referred only to corporate entities, not to individuals, i.e., it bore the names "Rebound Bracing, LLC," and "Dave Bockrath, LLC." *See* Ex. 1 to the Complaint and Tr. at p. 6-7.

**{¶ 37}** In addition, Ex. 2 (which referred to situations in which Pacetti chose not to charge Rebound a 20% commission) only mentions these limited liability corporations, not Bockrath individually. *See* Tr. at p. 10-11 and Ex. 2 attached to Notice of Plaintiffs['] Filing of Redacted Exhibit (Jan. 21, 2022).

**{¶ 38}** Based on the preceding discussion, the trial court correctly held that there was insufficient evidence in the record to pierce the corporate veil. Accordingly, Pacetti's second assignment of error is overruled.

## IV. Conclusion

**{¶ 39}** Both of Pacetti's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

TUCKER, P.J. and LEWIS, J., concur.