SANDUSKY MALL COMPANY, Appellee,

v.

PET CORNER, INC. et al., Appellants.

[Cite as *Sandusky Mall Co. v. Pet Corner, Inc.* (1997), 117 Ohio App.3d 198.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 95 C.A. 28.

Decided Jan. 15, 1997.

*David A. Fantauzzi,* for appellee.

*John F. Zimmerman,* for appellants.

JOSEPH E. O'NEILL, Presiding Judge.

On or about June 3, 1991, plaintiff-appellee Sandusky Mall Company, a limited partnership, and Pet Corner, Inc., d.b.a. Pet Corner, defendant-appellant, executed a lease for certain premises known as Unit No. 415 in Sandusky Mall, Sandusky, Ohio.

Sometime prior to September 17, 1993, appellants failed to abide by the terms of the lease and, as a result thereof, appellee, Sandusky Mall, filed a complaint in the trial court, alleging that at that time there was currently owing from appellants to appellee the sum of $11,604.81. Appellee further alleged in its

complaint that Nancy J. Foster and Dawn M. Herner had executed a guaranty of the lease. A copy of the guaranty was attached to and made an exhibit to the complaint.

Appellants, Pet Corner, Inc. and Nancy Foster, answered to the complaint and filed with their answer a counterclaim. Essentially, the answer filed by appellants denied all the allegations in the complaint, other than admitting that there had been a lease executed with appellee. For their counterclaim, appellants alleged that the plaintiff had agreed to and had a duty to convey the premises involved in a move in ready condition. It was further alleged that appellee had failed to convey the premises in such a condition and that, as a result of this failure, appellants incurred expenses in properly preparing walls, ceilings, floors, doors, pipes, electrical systems, mechanical systems, plumbing, and carpeting for their tenancy. It was alleged that, as a result of this failure, appellants had suffered a monetary loss.

Count Two of the counterclaim alleged that appellee had made representations with the intent and purpose of deceiving appellants and inducing appellants to rely on these false representations.

The prayer of the cross-complaint was for an award of damages of $10,000 on Count One of the counterclaim and an award of $10,000 on Count Two of the counterclaim, and also for attorney fees.

An answer to the counterclaim was filed by appellee and essentially denied all of the allegations of the counterclaim.

Appellant, Dawn M. Herner, eventually filed a cross-complaint naming Nancy J. Foster as the defendant therein and an answer to the complaint filed by appellee.

Eventually, appellee filed a motion for summary judgment and an amended motion for summary judgment, and the summary judgment issues were submitted to a referee in the trial court. In his report to the judge, the referee granted judgment against appellants jointly and severally for $67,034.11 plus interest at eighteen percent per annum from August 1, 1994, plus court costs. The referee went on to recommend that the counterclaim of Pet Corner, Inc. and Nancy J. Foster be dismissed at their costs. The referee further found that the cross-claims of appellant, Dawn M. Herner, were set for trial on December 13, 1994 at 9:00 a.m.

Appellants, Pet Corner, Inc. and Nancy J. Foster, filed objections to the report and recommendations of the referee. On December 22, 1994, appellant, Nancy J. Foster, and Dawn M. Herner dismissed their respective cross-claims.

On January 11, 1995, the trial judge signed and filed a judgment entry adopting the recommended judgment entry of the referee as the judgment and

order of the court and amended the amount of judgment to $89,822.81 plus interest from December 1, 1994.

Appellants, Pet Corner, Inc. and Nancy Foster, filed a timely notice of appeal directed to that judgment of the trial court.

■ The first assignment of error complains that the trial judge abused his discretion and committed reversible error in granting summary judgment and holding that, as a matter of law, a lessor in Mahoning County, Ohio, has no legal duty to mitigate damages by reletting a leased premises after a tenant vacates prior to the expiration of a lease.

The referee in his holding that there was no obligation on the part of the landlord to mitigate damages by reletting abandoned premises based his conclusion on adherence to the doctrine of *stare decisis*. In other words, the referee recommended to the trial court that the court stand by precedent and not disturb settled points. As the basis for this finding by the referee, the referee relied upon a case decided in this district court of appeals in *White v. Smith* (1917), 8 Ohio App. 368. This court held that should a tenant prematurely quit a premises, the landlord may elect to do any of the following: (1) suffer the premises to remain vacant and sue for the entire rent, (2) terminate the lease and sue for rent up to the time of abandonment, or (3) sublet the premises for the unexpired term for the balance of the lease term to reduce the lessee's damages. Based upon *White*, the duty to mitigate was one of three options open to appellee. Appellee did not choose the course most favorable to appellants and was under no duty to do so. The *White* case was followed by *Rosenberger v. Hearsnip* (1930), 42 Ohio App. 536, 182 N.E. 596, wherein the Lucas County Court of Appeals ruled that a landlord had no duty to relet abandoned premises to minimize damages.

We abide with the recommendation of the referee and the judgment of the trial judge as to this issue.

The first assignment of error is found to be without merit.

The second assignment of error complains that the trial judge abused his discretion and committed reversible error by granting summary judgment when there existed a genuine issue of material fact as to whether the liquidated damages clause of the lease was lawful.

■ Article 24 of the lease contained, among other things, provisions relating to default on the lease. Upon such an occurrence, the lease provided:

" * * * Landlord, at its option, shall have the right:

"(a) to collect not only the fixed annual Minimum Rent and other rentals and charges herein reserved, but also to collect an additional amount equal to the total of: (1) one and one-half times the greatest amount of any Percentage Rent

payable by Tenant in any lease year as provided herein, plus (2) one-half of the fixed annual Minimum Rent herein reserved, plus (3) one-half of all other rentals and charges herein reserved; said additional amount shall be payable for the period of Tenant's failure to do business, computed at a daily rate each and every day during such period, and such additional amount shall be deemed to be liquidated damages for such period; and/or

"(b) to treat such failure to do business as a default."

The referee recommended to the trial judge that this portion of the lease was acceptable and supported by facts. It was the referee's recommendation that Article 24 was included by the parties because of the difficulty or impossibility of determining the landlord's damages in the event that a tenant vacated or abandoned the premises. The referee specifically stated:

"The difficulty if not the impossibility of determining the loss of the additional rent based on the percentage of gross sales is obvious in the absence of a sufficiently long history of gross sales yielding a percentage payment."

The referee went on to find that the appellants admitted the absence of such a history. He further found that, additionally, Article 24 was intended to cover damages due to the loss of business traffic being another item of damages impossible to prove in any particular case. It was the referee's finding and conclusion that appellants had failed to submit any evidence to demonstrate the invalidity of Article 24.

Upon our review of the matters before us, we agree with the recommendation of the referee:

"Where the parties have agreed on the amount of damages, ascertained by estimation and adjustment, and have expressed this agreement in clear and unambiguous terms, the amount so fixed should be treated as liquidated damages and not as a penalty, if the damages would be (1) uncertain as to amount and difficult of proof, and if (2) the contract as a whole is not so manifestly unconscionable, unreasonable, and disproportionate in amount as to justify the conclusion that it does not express the true intention of the parties, and if (3) the contract is consistent with the conclusion that it was the intention of the parties that damages in the amount stated should follow the breach thereof. (*Jones v. Stevens*, 112 Ohio St. 43, 146 N.E. 894, paragraph two of the syllabus, followed.)" *Samson Sales, Inc. v. Honeywell, Inc.* (1984), 12 Ohio St.3d 27, 12 OBR 23, 465 N.E.2d 392, syllabus.

The second assignment of error is found to be without merit.

The third assignment of error contends that the trial judge abused his discretion and committed reversible error by granting summary judgment wherein the trial judge adopted a referee's report that provided insufficient findings of

fact or conclusions of law upon which the trial court could make an independent analysis to appropriately enter a judgment.

It is contended by appellants that the report filed with the trial judge by the referee did not contain a statement of facts forming the basis for the referee's recommendation to the trial judge. Civ.R. 53(E)(2) provides that if a party makes requests for findings of fact and conclusions of law, or if findings and conclusions are otherwise required by law, the referee's decision shall include findings of facts and conclusions of law. The report filed by the referee with the trial judge was extensive in factual details and exhaustive in legal conclusions. It was of sufficient depth to allow the trial judge to consider the objections filed to the report.

This third assignment of error is found to be without merit.

■ The fourth assignment of error contends that the trial judge abused his discretion and committed reversible error by granting summary judgment in an amount in excess of the sum prayed for in appellee's complaint.

The final judgment rendered by the trial judge was in excess of the amount prayed for in the complaint.

Civ.R. 54(C) provides that "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded the relief in the pleadings."

This fourth assignment of error is found to be without merit.

■ The fifth assignment of error contends that the trial judge abused his discretion and committed reversible error by awarding interest at a usurious rate of eighteen percent per annum from December 1, 1994. R.C. 1343.03 reads as follows:

"(A) In cases other than those provided for in sections 1343.01 and 1343.02 of the Revised Code, when money becomes due and payable upon any bond, bill, note, or other instrument of writing, upon any book account, upon any settlement between parties, upon all verbal contracts entered into, and upon all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of tortious conduct or a contract or other transaction, the creditor is entitled to interest at the rate of ten per cent per annum, and no more, unless a written contract provides a different rate of interest in relation to the money that becomes due and payable, in which case the creditor is entitled to interest at the rate provided in that contract.

"(B) Except as provided in divisions (C) and (D) of this section, interest on a judgment, decree, or order for the payment of money rendered in a civil action based on tortious conduct, including but not limited to a civil action based on

tortious conduct that has been settled by agreement of the parties, shall be computed from the date the judgment, decree, or order is rendered to the date on which the money is paid.

"(C) Interest on a judgment, decree, or order for the payment of money rendered in a civil action based on tortious conduct and not settled by agreement of the parties, shall be computed from the date the cause of action accrued to the date on which the money is paid, if, upon motion of any party to the action, the court determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case.

"(D) Divisions (B) and (C) of this section do not apply to a judgment, decree, or order rendered in a civil action based on tortious conduct if a different period for computing interest on it is specified by law, or if it is rendered in an action against the state in the court of claims, or in an action under Chapter 4123. of the Revised Code."

R.C. 1701.68 reads as follows:

"No domestic or foreign corporation, or anyone on its behalf, shall interpose the defense or make the claim of usury in any proceeding upon or with reference to any obligation of such corporation; nor shall any corporate note, bond, or other evidence of indebtedness, mortgage, pledge, or deed of trust, be set aside, impaired, or adjudged invalid by reason of anything contained in laws prohibiting usury or regulating interest rates."

Thus, as a matter of law, Pet Corner, Inc., one of appellants, is barred from interposing the defense of usury.

██ Two appellants, Nancy Foster and Dawn M. Herner, as guarantors of the lease, contend that the theory of a defense based upon usury should be open to them as individuals and not as corporations.

In its motion for summary judgment, appellee specifically requested the court to grant it damages plus eighteen percent interest. In the responses of all appellants, there was no challenge to this request. The issue as to usury was raised in objection to the report filed by Pet Corner, Inc. and Foster. In their objections, the specific objection to the referee's recommendation was the fact that the referee recommended that the judgment bear interest at eighteen percent per annum from August 1, 1994. The objecting parties contended:

"The referee failed to provide any factual basis for his decision to begin an interest calculation from August 1, 1994. No significant affect in this litigation took place on August 1, 1994."

In fact, the final judgment of the trial court did not grant judgment as of August 1, 1994, but rather as of December 1, 1994. It is not clear in this judgment entry whether the "interest" addressed by the trial judge was the legal rate of interest, ten percent, or the contractual rate of interest, eighteen percent. As to the application of the eighteen interest rate as to the individuals, Nancy Foster and Dawn M. Herner, as a part of their guarantee of lease, both of them agreed that in a default by the corporation, "the guarantor shall, without requiring demand of payment or notice of any such default, pay unto the landlord such sum or sums of money as will be sufficient to make up such deficiency of rental or other charges, and all damages that may accrue by the violation or a nonperformance of any of the covenants and conditions of this lease." It is presumed that, at the time the individual signed this guaranty of lease, both of them were fully aware of the potential eighteen percent interest rate; therefore, they cannot now deny that rate or claim usury.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

GENE DONOFRIO and COX, JJ., concur.