OPINION
Defendant-appellant John Kephart, dba Alpine Excavating, appeals the decision of the Mahoning County Common Pleas Court which entered judgment in favor of plaintiff-appellee Michael Skripac for $15,000. The issues before us concern whether the damage award was supported by sufficient evidence and whether it was error to allow plaintiff to amend, by increasing, his $5,000 prayer for relief the day before trial. For the following reasons, the trial court's judgment is affirmed.
 STATEMENT OF FACTS
Plaintiff wished to have a fishing pond constructed on his property in North Lima, Ohio. He thus called on defendant who ran an excavating company. On October 4, 1996, the parties signed a work contract which called for defendant to excavate a two-acre pond and install a conventional overflow system. (This contract originally called for a 1.5 acre pond, but the parties agree that the handwritten change to two acres was done prior to signing.) Plaintiff paid the $10,000 contract price to defendant up front. In the upper right-hand margin, above the title of the contract, the following handwritten notations exist: "1/2 8' DEEP" and "1/4 10' DEEP."
Defendant began work on the pond on the day the contract was signed. In June 1997, plaintiff hired Patierno Contracting, Inc. to perform work on the pond. Plaintiff paid Patierno almost $5,000 over the next year for this work. On March 4, 1998, plaintiff filed a breach of contract action against defendant. The complaint alleged that defendant failed to complete the work under the contract and that plaintiff was forced to hire another contractor to do the work. Plaintiff asked for $5,000 in damages. Defendant filed a counterclaim seeking $2,982, which he claimed represented grading work done for plaintiff outside of the contract.
The case was ordered into arbitration. On October 19, 1998, the arbitrator filed a report which awarded plaintiff $4,185 in damages and dismissed defendant's counterclaim. Defendant appealed to the trial court. The January 2000 trial date was later continued to December 12, 2000 at plaintiff's request.
The day before trial, plaintiff filed a "Motion to Amend Prayer" which asked to amend the prayer for damages to conform with the evidence, demanding "an amount less than $25,000.00, the exact amount which will be proven at trial." At the start of trial, the court immediately noted that it was just handed the motion prior to entering the courtroom. Defendant's attorney acknowledged that he was aware of the motion. The court noted that it wished to rule on the motion after the evidence was presented. Defendant's attorney responded, "That's fine, Your Honor." (Tr. 5). The case then proceeded through the bench trial.
As witnesses, plaintiff presented the testimony of himself and Vito Patierno, owner of the replacement excavating company. Plaintiff's evidence established that the pond was only 1.08 acres when defendant left the job. (Tr. 31). Plaintiff testified that defendant should have run a buried pipe through a ditch to direct inlet water from the neighbor's pond overflow. (Tr. 45-46). Patierno testified that he connected the inlet to the pond with buried pipe. (Tr. 101, 113-114). Plaintiff also complained that the dam was not high or wide enough, had an improper slope, and lacked erosion-preventing rocks. (Tr. 34-36, 41). Patierno built up the dam and, in doing so, increased the pond area to approximately 1.5 acres. (Tr. 32, 78).
Plaintiff also protested defendant's installation of a temporary four-inch overflow pipe which could not handle the overflow. (Tr. 39). Patierno installed a twelve-inch overflow pipe with a seepage collar and valves that allow plaintiff to adjust the water level. (Tr. 78, 103).
Plaintiff stated that according to the notations in the upper right-hand margin of the contract, defendant was required to dig half of the two acre pond at least eight feet deep with one quarter of that measuring ten feet deep. Plaintiff submitted evidence demonstrating that when defendant left the job, the pond depth mostly ranged from half an inch to four feet, with a .08 acre square in the middle containing depths between five and six feet. (Tr. 20). Patierno testified that by raising the dam, he increased the water level by about three feet. (Tr. 99, 105-108).
Plaintiff testified that he paid Patierno to salvage and improve the pond but that it was still not close to contract specifications. (Tr. 24). He noted that it is more expensive to fix a pond than to build one from scratch. (Tr. 33). Patierno stated that plaintiff paid him almost $5,000 for past work on the pond, but that in order to bring the pond up to the specifications of the contract, it would cost plaintiff approximately another $10,000. He stated that the pond would have to be drained to increase the depth and area. (Tr. 112).
Defendant admits that he did not excavate a two-acre pond due to the existence of a gas line on one side, a property boundary on one side, and a tree line on one side, but he did not explain why the fourth side could not compensate for the acreage. (Tr. 139). He states that the pond was almost 1.5 acres when he left and that he did other grading work for plaintiff in exchange for the missing half an acre. (Tr. 140, 149-150). He notes that the inlet pipe is not part of the contract and that its installation and burial is purely cosmetic. (Tr. 157).
Defendant states that he never installed the overflow system because plaintiff insisted on an adjustable system which he opined costs thousands more than the contracted for conventional system. He notes that his employee installed the four-inch pipe as a temporary system at plaintiff's insistence and that he was going to replace it with an adjustable system that plaintiff finally agreed to purchase on his own but which plaintiff never bought. (Tr. 135-137). Defendant states that he owes plaintiff around $450 for the lack of an overflow system. (Tr. 254).
As for the depth, defendant states that the notations in the upper right-hand corner were reference points, or plaintiff's preferences, written after the contract was signed. (Tr. 132, 243). Defendant states that he dug a square "bench," for winter fish-spawning; he testified that he used a transit laser to calculate that this bench should have been eight to ten feet deep after the pond filled. (Tr. 151, 180-182). He states that the notations referred to half of the benched area rather than half of the entire pond. He also opined that erosion after he completed his work caused much of the depth problems and blamed plaintiff's lack of landscaping on this erosion. (Tr. 214).
After hearing the testimony, plaintiff's attorney presented an argument on his motion to amend the prayer for relief. He noted that he was not the original attorney and that he recently realized that damages were more than the amount that has been paid to Patierno so far. (Tr. 280). Defendant's attorney asked that the motion be denied on two grounds. First, he stated that this increased damage amount was never disclosed in discovery in response to an interrogatory asking for a summary of the agreement with the contractor hired to correct defendant's work and any amount paid. Second, he alleged that Patierno's testimony on the amount it would cost to bring the pond up to contract specifications had no substance.
On December 18, 2000, the court granted plaintiff's motion to amend the prayer for relief. On December 20, 2000, the parties submitted closing arguments. On January 29, 2001, the court entered judgment for plaintiff in the amount of $15,000. The court opined that the cost of construction is the proper measure of damages and that there was sufficient credible evidence that it would cost this much to drain the pond and enlarge it to the proper area and depth, also considering the amount already paid to Patierno for corrections. The court then found for plaintiff on defendant's counterclaim. Defendant filed timely notice of appeal.
 ASSIGNMENT OF ERROR NUMBER ONE
Defendant sets forth two assignments of error, the first of which alleges:
 "IT WAS ERROR FOR THE TRIAL COURT TO PERMIT PLAINTIFF/APPELLEE TO AMEND HIS PRAYER FOR RELIEF TO INCLUDE DAMAGES WHICH HAD NOT BEEN DISCLOSED IN DISCOVERY."
Defendant argues that plaintiff violated discovery rules and created unfair surprise by seeking to increase the amount of damages sought the day before trial. Defendant states that if he knew the amount of damages sought earlier, he may not have appealed the arbitrator's award and would have been alerted to the need for expert testimony on the work needed on the pond and the value therefor. He asks that we revise the judgment to $4,935, the amount defendant was previously aware that plaintiff paid to Patierno.
Plaintiff responds by first arguing that the discovery request asked for agreements and amounts paid, not the actual amount of damages sought. Plaintiff then notes that defendant cannot rely on interrogatory answers as these are not part of the record. They were not filed before trial or in support of defendant's argument after trial. Even if we could consider such information on appeal without presentation in the trial court, the items are not presented to us now except as a quote in the defendant's appellate brief.
Plaintiff cites Civ.R. 15(A) and (B) and argues that the court could amend the pleadings in its discretion. Plaintiff then argues that defendant waived any argument by failing to object to the presentation of evidence on the increased amount of damages. Plaintiff also notes that defendant cannot argue unfair surprise where he failed to seek a continuance.
We hereby determine that plaintiff's counter-arguments are valid and defendant's first assignment of error is overruled. We first note that Civ.R. 15(A) allows a party to amend his pleading with leave of court, which shall be freely given when justice so requires. Additionally, Civ.R. 15(B) allows the court to grant a motion to amend the pleadings at any time to include issues not previously raised if those issues are tried by the express or implied consent of the parties. We note that Civ.R. 15(B) may not be the best argument since the motion to amend was made prior to trial, before the issues were tried by express or implied consent, and because it was not technically an issue that changed but was rather the amount needed to make plaintiff whole that changed.
Besides noting the liberal pleading amendment provisions of Civ.R. 15, we direct defendant's attention to Civ.R. 54(C) entitled, "Demand for judgment," which provides as follows:
"A judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment. Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded the relief in thepleadings." (Emphasis added.)
In other words, although a default judgment may not exceed the amount prayed for, a judgment that is not by default may exceed the amount demanded in pleadings. This more liberal damages entitlement was created in July 1994 so that Civ.R. 54(C) would coincide with Fed.Civ.R. 54(C). The prior Ohio rule stated, "a demand for judgment which seeks a judgment for money shall limit the claimant to the sum claimed in the demand unless he amends his demand not later that seven days before the commencement of trial." When this former rule was in use, it was controlling over the more general Civ.R. 15(A) and superseded the more liberal Civ.R. 15(B). Bishop v. Grdina (1985), 20 Ohio St.3d 26, 28-29. The importance of mentioning the former rule is that the process of comparing and contrasting the prior and present versions helps to explain how defendant's argument fails. The case law also supports our position. See, e.g., Sandusky Mall Co. v. Pet Corner, Inc. (1997),117 Ohio App.3d 198, 203 (from Mahoning County); Burrell Indus., Inc.v. Harrison Processing Corp. (June 24, 1999), Harrison App. No. 503, unreported, 4-5; Pearl v. JW Roofing Gen. Contractors (Feb. 28, 1997), Montgomery App. No. 16045, unreported, 6.
Moreover, defendant failed to offer any arguments before trial. He knew about the motion before trial. He cannot now argue unfair surprise where he did not enter an objection when given the opportunity by the court, and he did not ask for a continuance. Had defendant sought a continuance to prepare his own testimony or secure expert testimony to rebut the new allegations on damages and had the court denied the continuance, this would lean more toward error. However, defendant chose to remain silent before trial and allow the evidence to be presented. Besides pretrial, defendant had the opportunity to object during trial when evidence was presented that plaintiff incurred $10,000 more in damages than originally believed. If he believes that the increased damages constituted a different issue, then even under Civ.R. 15(B), he could seek a post-trial continuance to enable him to meet plaintiff's evidence. Such was not done. Rather, defendant waited until after trial to argue that plaintiff's motion to amend should be overruled on grounds of a discovery violation.
Additionally, under defendant's version of the relevant question and answer which he quotes in his brief, a violation is not glaring. Civ.R. 26(E) states that a party who responded to a request for discovery has no duty to supplement to include information thereafter acquired if the response was complete when made. Yet, that party must supplement if he later learns his response is incorrect or if the parties agree to supplementation or the requestor asks for supplementation. Civ.R. 26(E)(2) and (3). Defendant states that he asked for the name of the new excavating company hired to complete the pond and a copy or summary of any agreement entered with that company, along with a receipt showing any payment made. According to defendant's brief, plaintiff provided the name and a receipt. Plaintiff also specifically disclosed that further work will be needed to meet the contract specification in term of lake depth and that when the services are secured, further information will be provided. Thus, defendant knew that the amount paid to Patierno so far was not the full extent of damages. Additionally, as established at trial, the services to correct the lake depth had not yet been performed.
Regardless, as aforementioned, any discovery violation argument and request for exclusionary sanctions should have been made prior to trial seeing as how defendant was aware of the increased damage tally. Also, as plaintiff contends, we have no evidence to evaluate for a discovery violation. The record was not made below. Therefore, neither the trial court nor this court has the interrogatory questions and answers to review for violation. We cannot take as true quotes out of a brief. Further, we do not know what other questions and answers existed which may be relevant. For instance, discovery on the desired depth, the resulting depth, and the corrected depth would notify the defendant-excavator that more excavation must be performed at some cost to bring the pond up to the alleged contract specifications.
In conclusion, we find no merit to defendant's arguments here. The foregoing analysis demonstrates on multiple fronts why there is no reversible issue regarding the demand for more damages. In accordance, this assignment of error is overruled.
 ASSIGNMENT OF ERROR NUMBER TWO
Defendant's second assignment of error contends:
 "THE AWARD OF DAMAGES WAS NOT SUPPORTED BY THE EVIDENCE PRESENTED."
Defendant states that Patierno's testimony did not sufficiently establish the amount it would take to bring the pond up to contract specifications. He notes that the $10,000 figure was an estimate and was not itemized. He thus concludes that plaintiff did not meet his burden of proving the amount of damages to a fair degree of probability. Defendant asks that we enter judgment for plaintiff in the amount of $4,935 and eliminate all damages awarded that exceed this amount.
Plaintiff contends that cost of correction is a proper measure of damages in construction cases. It does not appear that defendant specifically disagrees with this statement as he is more concerned with his perceived lack of certainty of the cost of repair and since case law supports the cost of correction model of damages. See, e.g., Brewer v.Brothers (1992), 82 Ohio App.3d 148, 152; Barton v. Ellis (1986),34 Ohio App.3d 251, 253-254; South Union, Ltd. v. George Parker Assoc. (1985), 29 Ohio App.3d 197, 205. Plaintiff also notes that defendant did not rebut the $10,000 cost of correction amount through his own testimony or through cross-examination of Patierno.
The trial court believed plaintiff's testimony that the depth specifications were added prior to signing. The trial court believed plaintiff's testimony that the pond did not comply with the depth specifications, among other specifications, even after Patierno's work to reinforce the dam. Defendant admitted that the pond was not two-acres in area. The court was entitled to disbelieve defendant's testimony that he entered an oral agreement to do grading work in exchange for the missing half acre. Patierno testified that in order to expand the pond area to two acres and simultaneously increase the pond's depth, the pond would have to be drained and allowed to dry prior to digging. The existence of damages in an amount more than that paid to Patierno so far for emergency reparations was sufficiently proven.
We are thus left with the duty of conducting a final review of Patierno's testimony that it would cost plaintiff approximately $10,000 to bring the lake up to contract specifications. This is the cost Patierno, who did the original emergency corrections, told plaintiff he would need to do the work. (Tr. 108). Patierno generally explained to the court what work must be performed, such as preparation by draining and drying before digging. (Tr. 109). This answer was in response to a question by the court and was concluded with the court stating, "All right." (Tr. 109). It thus appears that the court was finished with its questioning on the reason for the $10,000 figure on direct examination. This would suggest to plaintiff's attorney that enough evidence had been presented. We also note that defendant charged and received $10,000 to dig the pond from scratch and testimony established that it is costlier to fix a pond than to originally excavate a pond.
Additionally, defendant had the opportunity to rebut this figure on cross-examination or through his own case. Yet, he failed to do so. Defendant's attorney pointed out on cross-examination that the $10,000 was not itemized. However, this is not a fatal flaw in proving damages. A contractor who already performed some work on the pond gave his estimate; this is how much he wants to perform the remaining work. The court believed this contractor.
In fact, as previously mentioned, there was no conflicting testimony on the cost to drain the lake, dig it deeper, and expand the perimeter. Defendant testified on his own behalf. He noted that he ran Alpine Excavating from 1991-1999. (Tr. 125-126). He stated that he excavated twenty-three ponds, some new and some pre-existing. (Tr. 127). However, he did not testify that it would not cost $10,000 to drain the pond and make it deeper and larger. For the reasons set forth above, the damage award was sufficiently supported by the evidence and that this assignment of error is overruled.
For the forgoing reasons, the judgment of the trial court is hereby affirmed.
Donofrio, J., concurs.
Waite, J., concurs.