[Cite as *Siltstone Servs., L.L.C. v. Guernsey Cty. Community Dev. Corp.*, 2020-Ohio-3877.]

COURT OF APPEALS
GUERNSEY COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| SILTSTONE SERVICES, LLC | JUDGES:<br>Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | Hon. John W. Wise, J.<br>Hon. Earle E. Wise, Jr., J. |
| -vs- | |
| | Case No. 19CA000047 |
| THE GUERNSEY COUNTY<br>COMMUNITY DEVELOPMENT<br>CORPORATION, et al., | |
| Defendants-Appellees | O P I N IO N |
| And | NUNC PRO TUNC |
| OHIO PUBLIC WORKS COMMISSION | |
| Defendant-Appellant | |
| And | |
| DEVON ENERGY PRODUCTION<br>COMPANY, LP | |
| Defendant-Appellee-<br>Cross-Appellant | |

CHARACTER OF PROCEEDINGS:     Appeal from the Guernsey County Court
of Common Pleas, Case No.
17CV000611

JUDGMENT:     Affirmed in part; Reversed and remanded
in part; Final Judgment entered in part

DATE OF JUDGMENT ENTRY:     October 28, 2020

APPEARANCES:

For Plaintiff-Appellee Siltstone
Services, LLC

ANDREW LYCANS
Critchfield, Critchfield & Johnston, LTD
225 North Market Street
P.O. Box 599
Wooster, Ohio 44691

MANMEET S. WALIA
Siltstone Services, LLC
1801 Smith Street – Ste. #2000
Houston, TX 77002

For Defendant-Appellees Synergy
Land Company, LLC and Whispering
Pines Land Company, LLC

CRAIG G. PELINI
PAUL B. RICARD
Pelini, Campbell & Williams, LLC
8040 Cleveland Ave., N.W. – Ste. #400
North Canton, Ohio 44720

For Defendant-Appellee Guernsey
County Community Development Corp.

MARIBETH MELUCH
Isaac Wiles Burkholder & Teetor, LLC
Two Miranova Place – Ste. # 700
Columbus, Ohio 43215

For Defendant-Appellee Patriot Land
Company, LLC

RICHARD V. ZURZ, JR.
Slater & Zurz, LLP
One Cascade Plaza – Ste. #2210
Akron, Ohio 44308

For Defendant-Appellee Gulfport Energy
Corporation

DANIEL C. GIBSON
MATTHEW W. WARNOCK
AARON M. BRUGGEMAN
CHRISTINE RIDEOUT SCHIRRA
Bricker & Eckler, LLP
110 South Third Street
Columbus, Ohio 43215

ZACHARY M. SIMPSON
Gulfport Energy Corporation
3001 Quail Springs Parkway
Oklahoma City, OK 73134

For Defendant-Appellant Ohio Public
Works Commission

DAVE YOST
Attorney General of Ohio

LIDIA MOWAD
JAMES PATTERSON
RACHEL HUSTON
CHRISTIE LIMBERT
CORY GOE
MICHELLE PFEFFERLE
JOSHUA NAGY
Assistant Attorneys General
Executive Agencies Section
30 E. Broad Street – 26th Floor
Columbus, Ohio  43215

For Defendant-Appellee/Cross-Appellant
Devon Energy Production Company, LP

TIMOTHY B. McGRANOR
ELIZABETH S. ALEXANDER
Vorys, Sater, Seymour and Pease, LLP
52 East Gay Street
Columbus, Ohio  43215

For Cross-Appellee
Guernsey County Community
Development Corporation

ERIK A. SCHRAMM
KYLE W. BICKFORD
Hanlon, Estadt, McCormick, &
Schramm Co., LPA
46457 National Road West
St. Clairsville, Ohio 43950

*Hoffman, P.J.*

**{¶1}**   Defendant-Appellant Ohio Public Works Commission ("OPWC") appeals the judgment entered by the Guernsey County Common Pleas Court granting Plaintiff-Appellee's Siltstone Resources, LLC ("Siltstone"); Defendant-Appellee's Guernsey County Community Development Corporation ("CDC"); Cross-Claim Defendants-Appellees' Gulfport Energy Corporation ("Gulfport"), Synergy Land Company ("Synergy"),Whispering Pine, LLC ("Whispering Pine"), Patriot Land Company, LLC ("Patriot"), Devon Energy Production, LP ("Devon"), and Guernsey County Commissioners ("Guernsey County")[1] motions for summary judgment and/or judgment on the pleadings, and denying Appellant OPWC's motion for partial summary judgment.

STATEMENT OF THE FACTS AND CASE

**{¶2}**   This case concerns the Clean Ohio Conservation Program and approximately 60 acres of property in Guernsey County, Ohio.

**{¶3}**   In 2000, Ohio voters approved a constitutional amendment to create a tax-exempt bond fund to be used for environmental conservation and revitalization purposes. Ohio Constitution, Article VIII, Section 2o(A). The amendment permitted the General Assembly to enact laws in accordance with the amendment. Ohio Constitution, Article VIII, Section 2o(B). As a result, the Clean Ohio Fund Green Space Conservation Program was created, and OPWC was tasked with administering the program.

**{¶4}**   In 2006, CDC applied for a grant of $894,500 from the Clean Ohio Fund for its Leatherwood Creek Riparian Project.  CDC represented to OPWC it would purchase land along the Leatherwood Creek "to allow the riparian corridor to be protected from

---

[1] The Guernsey County Commissioners have not filed a brief in the instant action.

encroachment by development and allow the natural beauty of [the] valley to be accessed by the public." CDC represented "the primary emphasis of this project is the preservation and restoration of water quality, natural stream channels, functioning floodplains, wetlands, streamside forests, and other natural features that contribute to the quality of life in Guernsey and Belmont County." The project included land in both Belmont and Guernsey Counties.

{¶5} OPWC approved the grant and a project agreement was entered into between OPWC and CDC in 2006. As part of the agreement, deed restrictions were required to be recorded with the deeds for any land purchased by CDC with grant money from OPWC.

{¶6} In February, 2008, CDC purchased approximately 60 acres in Guernsey County from George and Autumn Thompson, using grant funds received from OPWC. The deed contained the following restrictions:

> 1. Use and Development Restrictions. Declarant hereby agrees, for itself and its successors and assigns as owners of the Property, which Property shall be subject to the following: This property will not be developed in any manner that conflicts with the use of the Premises as a green space park area that protects the historical significance of this particular parcel. Only current structures will be maintained and no new structures will be built on the premises.

> 2. Perpetual Restrictions. The restrictions set forth in this deed shall be perpetual and shall run with the land for the benefit of, and shall be

enforceable by, Ohio Public Works Commission (OPWC). This deed and the covenants and restrictions set forth herein shall not be amended, released, extinguished or otherwise modified without the prior written consent of OPWC, which consent may be withheld in its sole and absolute discretion.

3. Enforcement. If Grantee, or its successors or assigns as owner of the Property, should fail to observe the covenants and restrictions set forth herein, the Grantee or it is successors or assigns, as the case may be, shall pay to OPWC upon demand, as liquidated damages, an amount equal to the rate of (a) two hundred percent (200%) of the amount of the Grant received by Grantee, together with interest accruing at the rate of six percent (6%) per annum from the date of Grantee's receipt of the Grant, or (b) two hundred percent (200%) of the fair market value of the Property as of the date or demand by OPWC. Grantee acknowledges that such sum is not intended as, and shall not be deemed, a penalty, but is intended to compensate for damages suffered in the event a breach or violation of the covenants and restrictions set forth herein, the determination of which is not readily ascertainable.

OPWC shall have the right to enforce by any proceedings at law or in equity, all restrictions, conditions, and covenants set forth herein. Failures by OPWC to proceed with such enforcement shall in no event be deemed a waiver of the right to enforce at a later date the original violation or subsequent violation.

    4. <u>Restrictions on transfer of the Property</u>. Grantee acknowledges that the Grant is specific to Grantee and that OPWC's approval of Grantee's application for the Grant was made in reliance on Grantee's continued ownership and control of the Property. Accordingly, Grantee shall not voluntarily or involuntarily sell, assign, transfer, lease, exchange, convey or otherwise encumber the Property without the prior written consent of OPWC, which consent may be withheld in its sole and absolute discretion.

**{¶7}** 2008 Deed from George and Autumn Thompson to CDC.

**{¶8}** In March, 2011, CDC entered into an oil and gas lease with Patriot. Patriot assigned the lease to Gulfport in October of 2012, but retained a royalty interest. Patriot subsequently assigned a portion of its royalty interest to Synergy and Whispering Pines. The lease included rights of ingress and egress to establish, conduct, and/or maintain production operations, and did not prohibit disturbing the surface of the land. CDC did not seek written consent of OPWC before entering this agreement, nor did Patriot receive consent to transfer its interest in the property.

**{¶9}** In August, 2012, CDC entered into a Water and Surface Use Agreement with Devon. Pursuant to the agreement, Devon was given the right to withdraw water from the ponds on the land incident to Devon's oil and gas activities. Devon could enter the land; draw water from the ponds in such volumes as Devon required; place and maintain both surface and subsurface pipelines, equipment, or facilities necessary or convenient for Devon's operations or for drawing, transporting, or storing water; distribute on the land earth, rock, or other materials excavated in laying pipelines or installing,

repairing, or removing other facilities on the land; and cut trees and other vegetation. CDC agreed not to allow third parties to use the ponds for swimming or other recreational purposes while Devon conducted operations on or near the pond.  Pursuant to an amendment to the agreement between CDC and Devon, Devon was permitted to pump non-potable replenishment water into the pond, and CDC agreed the pond would not be used as a source of drinking water or fish for human consumption.

**{¶10}** Devon exercised its rights under the agreement in 2013.  After installing water pipelines and a portable water pump, Devon withdrew 71,332 barrels of water from ponds on the property and from a creek, paying CDC a total of $14,726.40 for the water. CDC did not seek written consent of OPWC before entering this agreement with Devon.

**{¶11}** In October of 2012, CDC transferred two acres of surface rights to the property to Guernsey County for construction of a trailhead, without obtaining the consent of the OPWC for the sale.

**{¶12}** On April 24, 2013, the Executive Director of CDC, Daniel Speedy, signed a right of way letter agreement giving Siltstone the right to use a private road on the property to access Siltstone's adjoining property.   In exchange for use of the right of way for its commercial oil and gas activities, Siltstone agreed to maintain the road.  Eventually, CDC erected a gate on the property preventing Siltstone from using the right of way, which action gave rise to the instant lawsuit.

**{¶13}**  Siltstone filed the instant action against CDC on November 1, 2017, seeking a declaration the right of way agreement between the parties remained in effect and an order directing CDC to specifically perform under the agreement by executing a

recordable right of way.  Siltstone later amended the complaint, adding a cause of action seeking money damages for breach of contract.

{¶14}  OPWC intervened in the action on July 2, 2018.  OPWC filed a counterclaim against Siltstone and a cross-claim against CDC, alleging the right of way agreement and the other interests in the property conveyed by CDC violated the deed restrictions.  OPWC obtained leave to join Gulfport, Patriot, Synergy, Whispering Pines, Devon, and Guernsey County to the action, and filed cross-claims against these new party defendants.  OPWC sought both injunctive relief and monetary damages pursuant to the liquidated damages clause in the deed restrictions. Devon filed a cross claim against CDC, alleging pursuant to its water and surface use agreement with CDC, it had a right of defense and indemnification from CDC.  CDC cross-claimed against OPWC, seeking a declaration OPWC is limited to money damages and equitable relief is not available, the transfer restriction in the deed is void, the use restriction is limited to the surface of the property only, the use restriction only bars activity inconsistent with use of the property as green space, and the liquidated damages provision is void as a penalty.

{¶15} All parties filed dispositive motions.  OPWC filed a motion for partial summary judgment on all issues except liquidated damages.  CDC filed motions for summary judgment as to Siltstone's claims, OPWC's claims, and Devon's claim.  Siltstone filed a motion for summary judgment.  Devon filed a motion for summary judgment as to OPWC's cross-claims, and a motion for partial summary judgment on its cross-claim against CDC.  Patriot filed a motion for summary judgment.  Gulfport, Synergy, and Whispering Pine filed motions for judgment on the pleadings pursuant to Civ. R. 12(C).

{¶16} The trial court found Speedy's actions in signing the right of way agreement were ultra vires and not binding on CDC.[2] The court found OPWC was not entitled to injunctive nor declarative relief pursuant to statute.

{¶17} The trial court concluded the use restriction in the deed applied only to the surface of the land. The court found no evidence the surface was used by Patriot, Gulfport, Synergy or Whispering Pine, and therefore the oil and gas leases did not violate the use restriction in the deed.

{¶18} The trial court found OPWC had not established actual damages for the withdrawal of water from the pond by Devon, and the liquidated damages clause in the Thompson deed was disproportionate to the damage caused by Devon to the ponds, and therefore void as a penalty.

{¶19} The trial court concluded the transfer to Guernsey County did not violate the use restriction, as the construction of a trailhead was consistent with green space use. The trial court found no structures have been erected, and the transfer augments the green space objectives.

{¶20} Finally, the trial court concluded the transfer restriction is void as a matter of law, as it requires perpetual ownership rather than ownership or long-term control.

{¶21} The court accordingly granted CDC's motion for summary judgment as to Siltstone's complaint, and denied Siltstone's summary judgment motion as to CDC. The court granted CDC's motion for summary judgment as to OPWC's cross claim against CDC, and granted CDC's motion for summary judgment on its cross-claim against OPWC. The court granted CDC's motion for summary judgment on Devon's cross-claim

---

[2] Siltstone's appeal from this judgment is the subject of the related appeal, Case No. 19CA00049.

against CDC, and denied Devon's motion for summary judgment on said cross-claim. The court granted the motion for summary judgment filed by Patriot, and the motions for judgment on the pleadings filed by Gulfport, Synergy and Whispering Pine. The court denied Siltstone's motion for summary judgment on OPWC's counterclaim because the right of way agreement was found to be void as ultra vires, and denied OPWC's motion for partial summary judgment.

{¶22} As to Devon's cross-claim against the CDC, the trial court found the indemnification clause relates to damages to the ponds or personal injury. The court found the cross-claims of OPWC against Devon did not relate to either damage to the ponds or personal injury, and therefore granted summary judgment to CDC on the cross-claim.

{¶23} It is from the October 25, 2019 judgment of the Guernsey County Common Pleas Court OPWC prosecutes this appeal, assigning as error:


I. THE TRIAL COURT ERRED IN DENYING THE COMMISSION'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN GRANTING APPELLEES' VARIOUS MOTIONS BECAUSE THE COURT SHOULD HAVE APPLIED THE PLAIN LANGUAGE OF THE DEED RESTRICTIONS TO FIND THAT APPELLEES BREACHED THE DEED RESTRICTIONS.

II. THE TRIAL COURT ERRED IN DENYING THE COMMISSION'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN GRANTING APPELLEES' VARIOUS MOTIONS FOR SUMMARY JUDGMENT

BECAUSE THE DEED RESTRICTIONS ARE VALID AND ARE ENFORCEABLE THROUGH DECLARATORY AND INJUNCTIVE RELIEF.

III. THE TRIAL COURT ERRED IN DENYING THE COMMISSION'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN GRANTING APPELLEES' VARIOUS MOTIONS FOR SUMMARY JUDGMENT BECAUSE THE COMMISSION IS ENTITLED TO MONEY DAMAGES.

**{¶24}** Devon assigns a single error to the October 25, 2019 judgment of the court:

THE TRIAL COURT ERRED IN DENYING DEVON'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING THE CDC'S MOTION FOR SUMMARY JUDGMENT ON DEVON'S CROSS-CLAIMS AGAINST THE CDC.

I.

**{¶25}** OPWC argues the trial court erred in granting the various dispositive motions of the Appellees herein and in denying its motion for summary judgment regarding CDC's violations of the use, transfer and perpetual restrictions in the Thompson deed.

**{¶26}** Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. *Smiddy v. The Wedding Party, Inc.,* 30 Ohio St.3d 35, 36 (1987). As such, we must refer to Civ. R. 56(C) which provides in pertinent part:

Summary Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.

**{¶27}** Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record demonstrating the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Vahila v. Hall*, 77

Ohio St.3d 421, 429, 1997-Ohio-259, *citing Dresher v. Burt*, 75 Ohio St.3d 280, 1996-Ohio-107.

**{¶28}** A motion for a judgment on the pleadings, pursuant to Civ. R. 12(C), presents only questions of law. *Peterson v. Teodosio*, 34 Ohio St.2d 161, 165–166, 297 N.E.2d 113 (1973). The determination of a motion under Civ. R. 12(C) is restricted solely to the allegations in the pleadings and the nonmoving party is entitled to have all material allegations in the complaint, with all reasonable inferences to be drawn therefrom, construed in its favor. *Id.* Evidence in any form cannot be considered. *Conant v. Johnson*, 1 Ohio App.2d 133, 135, 204 N.E.2d 100 (1964). In considering such a motion, one must look only to the face of the complaint. *Nelson v. Pleasant*, 73 Ohio App.3d 479, 597 N.E.2d 1137 (1991).

**{¶29}** OPWC first argues the court erred in granting CDC's motion for summary judgment and denying its own motion for summary judgment on its claim CDC's transfers of interest in the property to Patriot, Devon, and Siltstone violated the use restriction in the Thompson deed.

**{¶30}** The use restriction in the deed provides:

1. Use and Development Restrictions. Declarant hereby agrees, for itself and its successors and assigns as owners of the Property, which Property shall be subject to the following: This property will not be developed in any manner that conflicts with the use of the Premises as a green space park area that protects the historical significance of this

particular parcel. Only current structures will be maintained and no new structures will be built on the premises.

**{¶31}** The trial court found the use restriction applied only to the surface of the property, and not to the subsurface. The trial court found the Patriot lease has been released, and there was no evidence presented concerning any surface use of the property under the lease. The trial court found the OPWC did not present evidence the withdrawal of "the de minimus [sic] amount of water for a limited period of time" by Devon conflicted with the use of the property as a green space. The trial court found the Siltstone right of way was invalid on other grounds.

**{¶32}** In interpreting the identical use restriction language set forth in the Thompson deed, the Court of Appeals for the Seventh District, in a case involving the Leatherwood Creek project as it relates to land located in Belmont County and involving many of the same parties as the instant case, concluded the term "green space park area" in this use restriction applied only to the surface of the land:

Since there is no statutory or deed definition for "green space park area," rules of construction indicate we use the common definition. A park is an area of land set aside for public use. https://www.thefreedictionary.com/park. Green space is "a natural area in or around a development, intended to provide buffer, noise control, recreational use, and/or wildlife refuge, all in order to enhance the quality of life in and around the development." https://financial-

dictionary.thefreedictionary.com/green+space. Green space is often intentionally provided in the urban setting; it is nature space in the city. However, green space may occur in the rural setting also. Commonly, in the rural settings it is preserving areas of nature from development or reclaiming areas of nature that were used for industry. In northeast Ohio, unused railways are converted to trails and land stripped from mining is reclaimed. Both occurred on the property in this case.

Therefore, the phrase "green space park area" means the portion of the property that one would use in the normal park setting, meaning the area on which one actually walks, runs, bikes, and hikes, which is the surface, not the subsurface. The trial court's limitation of green space to the surface of the property was correct.

{¶33} *Siltstone Resources, LLC v. Ohio Pub. Works Commission*, 7th Dist. No. 18 BE 0042, 2019-Ohio-4916, 137 N.E.3d 144, ¶¶ 42-43, *reconsideration denied sub nom. Siltstone Resources, LLC v. State of Ohio Pub. Works Commission*, 7th Dist. Belmont No. 18 BE 0042, 2020-Ohio-729, ¶¶ 42-43, and *appeal allowed sub nom. Siltstone Resources, L.L.C. v. Ohio Pub. Works Comm.,* 158 Ohio St.3d 1443, 2020-Ohio-1032, ¶¶ 42-43 (2020).

{¶34} Although we agree with the Seventh District's decision the use restriction term "green space park area" refers to the surface of the property only, not to both the surface and the subsurface, we find resolution of this issue unnecessary to our analysis of whether the Patriot, Devon, and Siltstone property interests conveyed by CDC violated

the use restriction. We disagree with the trial court the extinguishment of the property interests held by Patriot and Devon rendered this claim moot. OPWC sought declaratory and injunctive relief, as well as liquidated damages, on its claim CDC violated the use restriction by *entering* agreements which permitted use of the property in a manner inconsistent with its use as a green space park area, whether or not the property was actually damaged under these agreements. For the following reasons, we conclude the interests conveyed to Patriot, Devon, and Siltstone all violated the use restriction at the time the agreements were entered into by CDC.

**{¶35} Patriot:** As explained in *Siltstone, supra,* a lease of mineral rights allows the lessee reasonable access to the surface, defeating the purpose of a "green space park area:"

> Appellant OPWC argues that allowing lateral mining still permits Appellees reasonable access to the surface and therefore allowing mining of any sort defeats the purpose of a "green space park area." Admittedly, at common law the mineral holder was still entitled to reasonable access to the surface to reach his or her property. Eastern Mineral Law Foundation, The Issues: The Rights and Interests at Play, 23 E. Min. Found. § 9.04, 2003 WL 22234516 ("Despite the availability of modern directional drilling, the development and production of oil and gas in Eastern states most often requires reasonable access to and the use and occupancy of some portion of the surface."). See also *Skivolocki*, 38 Ohio St.2d at 249, 313 N.E.2d 374, fn. 1 (" '* * * unless the language of the conveyance by which the minerals are acquired repels such construction, the mineral estate carries with it the

right to use as much of the surface as may be reasonably necessary to reach and remove the minerals.' See, also, 37 Ohio Jurisprudence 2d 18, Mines and Minerals, Section 14. This implied right of the mineral owner is best explained as a practical attempt to insure that both he, and the surface owner, can enjoy their respective estates."). If the mineral holder was not permitted reasonable access, then the minerals would essentially be landlocked without means of extraction. Typically when mineral rights are leased, the lease usually permits reasonable access to the surface by the terms of the lease. For instance, often the lease permits drilling of water wells, building access roads, installing fencing, and removing trees and brush. These acts affect the surface.

**{¶36}** *Siltstone, supra,* at ¶44.

**{¶37}** The oil and gas lease CDC entered with Patriot did not include language preventing use of the surface to access the subsurface minerals.  Thus, the lease impliedly included the right to use the surface to access the minerals, which is in conflict with the use of the property as green park space.  Further, the language of the Patriot lease specifically gave Patriot the right to engage in "core drilling, and the drilling, operating for, and producing of" oil and gas on the property, as well as the right to lay pipeline, remove timber, dig pits, and construct gates on all access roads on the property. The lease further made provisions for possible impacts and effects on the property surface, as well as the water on the property, and thus recognized the possibility of damage to the surface of the property should Patriot exercise its rights under the lease.

**{¶38}** We find the lease CDC entered with Patriot violated the use restriction in the Thompson deed, as it allowed for Patriot's use of the surface of the land in a manner inconsistent with the use of the property as green park space.

**{¶39}  Devon:** CDC entered into a Water and Surface Use Agreement with Devon. Pursuant to the agreement, Devon was given the right to withdraw water from the ponds on the land incident to Devon's oil and gas activities.  Devon could enter the land; draw water from the ponds in such volumes as Devon required; place and maintain both surface and subsurface pipelines, equipment, or facilities necessary or convenient for Devon's operations or for drawing, transporting, or storing water; distribute on the land earth, rock, or other materials excavated in laying pipelines or installing, repairing, or removing other facilities on the land; and cut trees and other vegetation.  CDC agreed not to allow third parties to use the ponds for swimming or other recreational purposes while Devon conducted operations on or near the pond.  Pursuant to an amendment to the agreement between CDC and Devon, Devon was permitted to pump non-potable[3] replenishment water into the pond, and CDC agreed the pond would not be used as a source of drinking water or fish for human consumption.

**{¶40}** Devon exercised its rights under the agreement in 2013.  After installing water pipelines and a portable water pump, Devon withdrew 71,332 barrels of water from ponds on the property and from a creek, paying CDC a total of $14,726.40 for the water.

**{¶41}** We find the water and surface use agreement violated the use restriction in the Thompson Deed.  Not only was Devon given rights to disturb the surface of the land, the agreement required CDC to ban the public from use of the land during Devon's

---

[3] Non-potable water is water that is not of drinking quality, but may still be used for many other purposes.

operations, which clearly is in conflict with the use of the property as green park space. Further, the agreement allowed Devon to damage the ponds on the property by pumping non-potable water into the ponds, preventing the use of the pond for fishing. In addition, Devon actually laid pipe, installed a water pump, and withdrew water from the property, in conflict with the use restriction confining the use of the property to green park space. While the trial court characterized the withdrawal of water as de minimis, we find the withdrawal of 71,332 barrels of water is in conflict with the use of the property as green park space. We find the Water and Surface Use Agreement CDC entered with Devon violated the use restriction of the Thompson deed.

{¶42} **Siltstone:** The right of way letter Speedy signed with Siltstone allows Siltstone, "for consideration paid to CDC the sufficiency of which is hereby acknowledged, to have access to the right of way." The agreement further gives "Siltstone, its affiliates, and its third parties full and direct access to the ROW." Siltstone agreed to service the right of way as necessary to maintain it in the same or better condition as when the agreement was signed.

{¶43} Siltstone argues its use of the pre-existing road, which also is used by people using the space for green space park purposes, does not conflict with the use of the surface of the property as green space, and in fact enhances the roadway because of its agreement to maintain the road. We disagree. We find the use of the road concomitant to Siltstone's commercial business enterprise differs from use of the road for green space park purposes. The use of the road by Siltstone's commercial oil and gas equipment is different in both purpose and in traffic volume to the use of the road by members of the public, who are driving private vehicles to access the property for

recreational purposes.  Use of the right of way was not necessary for Siltstone to access its property, as Siltstone's property was not landlocked.  Accordingly, we find the right of way agreement Speedy entered with Siltstone violated the use restriction in the deed.

**{¶44}** OPWC also argues the transfers of property interests CDC made to Patriot, Devon, Siltstone, and Guernsey County violated the transfer restriction in the Thompson deed, which provides:

4. <u>Restrictions on transfer of the Property</u>. Grantee acknowledges that the Grant is specific to Grantee and that OPWC's approval of Grantee's application for the Grant was made in reliance on Grantee's continued ownership and control of the Property. Accordingly, Grantee shall not voluntarily or involuntarily sell, assign, transfer, lease, exchange, convey or otherwise encumber the Property without the prior written consent of OPWC, which consent may be withheld in its sole and absolute discretion.

**{¶45}** It is undisputed CDC did not obtain the written consent of OPWC before selling, leasing, or encumbering the property via its agreements with Patriot, Devon, and Siltstone, and Guernsey County.  However, the trial court found the transfer restriction was void as a matter of law.

**{¶46}** We note at the outset, we concur with the Seventh District Court of Appeals that the transfer restriction applies to both the surface and the subsurface.  *Siltstone, supra,* ¶¶50-51.

**{¶47}** Turning to the issue of whether the restriction is void, where land is devised upon condition the devisee shall not sell it, such a restraint is void as repugnant to the devise and contrary to public policy. *Ohio Soc. for Crippled Children & Adults, Inc. v. McElroy*, 175 Ohio St. 49, 52, 191 N.E.2d 543, 546 (1963), *citing Anderson v. Cary*, 36 Ohio St. 506, 38 Am.Rep. 602 (1881); *Hobbs v. Smith*, 15 Ohio St. 419 (1864). However, such a restraint on alienation of property conveyed to a trustee to be held for charitable or other public uses will usually be given effect. *Id., citing Perin v. Carey*, 24 How. 465, 65 U.S. 465, 16 L.Ed. 701 (1861); *Board of Education of Incorporated Village of Van Wert v. Inhabitants*, 18 Ohio St. 221, 98 Am.Dec. 114 (1868); *Babin v. City of Ashland*, 160 Ohio St. 328, 345 et seq., 116 N.E.2d 580 (1953); *Gearhart v. Richardson*, 109 Ohio St. 418, 142 N.E. 890 (1924). "There are two reasons for this: (1) the interest of the public in encouraging the creation and the continuation of trusts for charitable or public purposes and (2) the power of a court of equity to authorize a prohibited sale where necessary for the proper accomplishment of the charitable or public purposes of the trust, thereby preventing the trust property from being completely inalienable." *Id.* at 52-53.

**{¶48}** In the instant case, we find the transfer restriction akin to property conveyed to be held for charitable or public use, and therefore find an exception to the general rule that restrictions on alienation of property are void.

**{¶49}** In 2000, Ohio voters approved a constitutional amendment to create a tax-exempt bond fund to be used for environmental conservation and revitalization purposes. Ohio Constitution, Article VIII, Section 2o(A). The amendment permitted the General Assembly to enact laws in accordance with the amendment. Ohio Constitution, Article VIII, Section 2o(B). As a result of the amendment, the Clean Ohio Fund Green Space

Conservation Program was created and OPWC was tasked with administering the program. CDC applied for grant money from OPWC for the specific purpose of purchasing property to be used for environmental conservation and revitalization purposes, in order to further the public policy as set forth by the voters in approving the constitutional amendment to create the tax-exempt bond fund for environmental conservation. While CDC argues Ohio also has expressed a public policy encouraging oil and gas production, CDC did not apply for grant funds from OPWC to further the State's public policy interest in oil and gas production. However, CDC *did* apply for and receive grant funds to further the State's interest in preserving land for environmental conservation and revitalization.

{¶50} The contract between OPWC and CDC, in which CDC agreed to the transfer restriction as a condition of receiving grant funds, and the resultant purchase of the property from the Thompsons including the transfer restriction in the deed, are not a normal land transfer between grantor and grantee. The receipt of grant funds from OPWC placed the parties in a unique relationship, both as to each other and as to the public. Pursuant to the constitutional amendment passed by the voters of the state of Ohio, OPWC became the guardian and "trustee" of the public's interest in land purchased with grant money from the State for the purposes expressed in the amendment, while the public was the third party beneficiary of such agreements. In entering into an agreement whereby CDC received money from OPWC to purchase property in furtherance of the purposes set forth in the amendment, CDC stepped into OPWC's shoes as trustee of the public interest with respect to property purchased with grant funds. OPWC maintained an ongoing interest in ensuring the property, which it gave CDC grant money to purchase,

was in fact used for the purposes represented by CDC at the time it applied for the grant money. OPWC maintained a responsibility to ensure any transfer of any interest in the property would continue to meet the purposes for which the grant money was given. As such, we find the alienability restriction in this case is not void, as it is similar in character to a restraint on alienation of property conveyed to a trustee to be held for charitable or other public uses. *See Ohio Soc. For Crippled Children & Adults, supra.*

**{¶51}** There is no dispute CDC violated the transfer restriction in its transfers to Patriot, Devon, Siltstone and Guernsey County, as it did not receive the written permission of OPWC before making the transfers of interest. Further, we find the fact the Patriot and Devon leases are no longer in effect to be irrelevant. The transfer restriction was violated at the time of the transfer, entitling OPWC to relief and subjecting CDC to liability.

**{¶52}** Finally, OPWC argues the transfer to Guernsey County violates the perpetual restriction:

> 2. Perpetual Restrictions. The restrictions set forth in this deed shall be perpetual and shall run with the land for the benefit of, and shall be enforceable by, Ohio Public Works Commission (OPWC). This deed and the covenants and restrictions set forth herein shall not be amended, released, extinguished or otherwise modified without the prior written consent of OPWC, which consent may be withheld in its sole and absolute discretion.

**{¶53}** The deed restrictions are not present in the deed transferring two acres from CDC to Guernsey County. It is undisputed CDC did not obtain prior written consent of OPWC before transferring the property without the requisite deed restrictions. Accordingly, we find the transfer to Guernsey County violates the perpetual restriction, in addition to the transfer restriction as noted supra.

**{¶54}** In sum, we find the trial court erred in granting summary judgment to CDC and denying partial summary judgment to OPWC on the issue of violation of the use restriction by CDC's transfer of property interests to Patriot, Devon, and Siltstone; on the issue of violation of the transfer restriction by CDC's transfer of property interests to Patriot, Devon, Siltstone, and Guernsey County; and on the issue of violation of the perpetual restriction and transfer restriction by CDC's sale of property to Guernsey County.

**{¶55}** The first assignment of error is sustained.

II.

**{¶56}** In its second assignment of error, OPWC argues the trial court erred in finding it was not entitled to injunctive or declaratory relief.

**{¶57}** The trial court found pursuant to R.C. 164.26(A), OPWC's relief was limited solely to liquidated damages, and OPWC could not receive injunctive or declaratory relief. R.C. 164.26(A) provides:

> The director of the Ohio public works commission shall establish policies related to the need for long-term ownership, or long-term control through a lease or the purchase of an easement, of real property that is the

subject of an application for a grant under sections 164.20 to 164.27 of the Revised Code and establish requirements for documentation to be submitted by grant applicants that is necessary for the proper administration of this division. The policies shall provide for proper liquidated damages and grant repayment for entities that fail to comply with the long-term ownership or control requirements established under this division.

**{¶58}** The enforcement provision of the deed provides for both equitable relief and liquidated damages:

3. Enforcement. If Grantee, or its successors or assigns as owner of the Property, should fail to observe the covenants and restrictions set forth herein, the Grantee or it is successors or assigns, as the case may be, shall pay to OPWC upon demand, as liquidated damages, an amount equal to the rate of (a) two hundred percent (200%) of the amount of the Grant received by Grantee, together with interest accruing at the rate of six percent (6%) per annum from the date of Grantee's receipt of the Grant, or (b) two hundred percent (200%) of the fair market value of the Property as of the date or demand by OPWC. Grantee acknowledges that such sum is not intended as, and shall not be deemed, a penalty, but is intended to compensate for damages suffered in the event a breach or violation of the covenants and restrictions set forth herein, the determination of which is not readily ascertainable.

OPWC shall have the right to enforce by any proceedings at law or in equity, all restrictions, conditions, and covenants set forth herein. Failures by OPWC to proceed with such enforcement shall in no event be deemed a waiver of the right to enforce at a later date the original violation or subsequent violation.

**{¶59}** The Seventh District addressed this identical issue, concluding OPWC was entitled to injunctive and declaratory relief, in addition to liquidated damages provided for in the statute:

First, nothing in R.C. 164.26(A) prevents equitable relief. That section instructs the director of the OPWC to establish policies related to the need for long-term ownership or control of property that is subject to clean Ohio conservation fund grants. It also states the policies are to provide for proper liquidated damages and grant repayment for entities that fail to comply with the long-term ownership or control requirements. Reading the plain wording of the statute leads to the conclusions that (1) the OPWC director must establish policies relating to the need for long-term ownership or control of the property that is the subject of the grant and (2) some of those policies are to provide for liquidated damages and grant repayment for failure to comply with the long-term requirement.

Nothing in the statute prevents equitable relief as a remedy for failure to comply with the long-term ownership requirement. The statute does not

include an exclusive list of remedies. The remedies the statute mentions are in regard to instructing the director of the OPWC to establish policies to provide for liquidated damages and grant repayment.

Second, the Enforcement Restriction clearly and unambiguously provides that Appellant OPWC has the right to enforce the deed restrictions in equity. Nothing in the language of the Enforcement Restriction can be construed to mean anything else.

**{¶60}** *Siltstone, supra,* ¶¶66-68.

**{¶61}** We agree with the reasoning of the Seventh District. As this Court has previously noted:

The Supreme Court of Ohio has consistently held that "[w]here the language contained in a deed restriction is indefinite, doubtful and capable of contradictory interpretation, that construction must be adopted which least restricts the free use of the land." *Houk v. Ross* (1973), 34 Ohio St.2d 77, 296 N.E.2d 266, paragraph two of the syllabus, overruled on other grounds by *Marshall v. Aaron* (1984), 15 Ohio St.3d 48, 15 OBR 145, 472 N.E.2d 335. "Where the language in the restriction is clear, the court must enforce the restriction. Otherwise, the court would be rewriting the restriction. * * * The key issue is to determine the intent of the parties as reflected by the language used in the restriction." *Dean v. Nugent Canal*

*Yacht Club, Inc.* (1990), 66 Ohio App.3d 471, 475, 585 N.E.2d 554, 556-557.

**{¶62}** *Morgan Woods Homeowners' Assn. v. Wills*, 5th Dist. Licking No. 11 CA 57, 2012-Ohio-233, ¶ 42.

**{¶63}** We find the language in the restriction agreed to by the parties is clear: OPWC has the right to enforce the deed restrictions in law and in equity. We find R.C. 164.26(A) provides for liquidated damages, but does not make liquidated damages the sole remedy available to OPWC.

**{¶64}** The second assignment of error is sustained.

III.

**{¶65}** In its third assignment of error, OPWC argues the court erred in granting summary judgment finding the liquidated damages provision to be a penalty, and therefore unenforceable.[4]

**{¶66}** The trial court made the following conclusion of law regarding the liquidated damages provision:

OPWC's claims relating to the Devon Energy Water and Surface Agreements do not establish a claim for damages. The OPWC put forth no evidence that the withdrawal of the de minimus [sic] amount of water for a limited period of time conflicts with the use of the CDC property as a green space park area. Additionally, OPWC's claim for damages based upon the

---

[4] OPWC did not seek summary judgment on the validity of the liquidated damages provision, but rather argues evidence is necessary on the issue of whether the damages clause is a penalty.

Enforcement Provision in the Thompson Deed, is disproportionate to the alleged damages sustained and rather act [sic] as a penalty. Liquidated damages clauses are invalid and unenforceable where the damages clause provides for an amount disproportionate to the actual damage. Lakewood Creative Customers v. Sharp, 31 Ohio App. 3d 116, Syll. ¶2 (1986).

{¶67} Judgment entry, October 25, 2019, conclusion of law 9.

{¶68} The enforcement clause in the instant case provides in pertinent part:

3. Enforcement. If Grantee, or its successors or assigns as owner of the Property, should fail to observe the covenants and restrictions set forth herein, the Grantee or it is successors or assigns, as the case may be, shall pay to OPWC upon demand, as liquidated damages, an amount equal to the rate of (a) two hundred percent (200%) of the amount of the Grant received by Grantee, together with interest accruing at the rate of six percent (6%) per annum from the date of Grantee's receipt of the Grant, or (b) two hundred percent (200%) of the fair market value of the Property as of the date or demand by OPWC. Grantee acknowledges that such sum is not intended as, and shall not be deemed, a penalty, but is intended to compensate for damages suffered in the event a breach or violation of the covenants and restrictions set forth herein, the determination of which is not readily ascertainable.

**{¶69}** While generally liquidated damages clauses are enforceable, such damages are not enforceable on public policy grounds when the stipulated damages constitute a penalty. *Lake Ridge Academy v. Carney*, 66 Ohio St.3d 376, 381, 613 N.E.2d 183, 187 (1993). The Ohio Supreme Court has set forth the following test to judge a stipulated damages provision:

Where the parties have agreed on the amount of damages, ascertained by estimation and adjustment, and have expressed this agreement in clear and unambiguous terms, the amount so fixed should be treated as liquidated damages and not as a penalty, if the damages would be (1) uncertain as to amount and difficult of proof, and if (2) the contract as a whole is not so manifestly unconscionable, unreasonable, and disproportionate in amount as to justify the conclusion that it does not express the true intention of the parties, and if (3) the contract is consistent with the conclusion that it was the intention of the parties that damages in the amount stated should follow the breach thereof.

**{¶70}** *Samson Sales, Inc. v. Honeywell, Inc.,* 12 Ohio St.3d 27, 29, 465 N.E.2d 392, 394 (1984), *citing Jones v. Stevens,* 112 Ohio St. 43, 146 N.E. 894, 3 Ohio Law Abs. 164 (1925).

**{¶71}** The Supreme Court has provided additional guidance for determining if stipulated damages are a penalty:

[I]t is necessary to look to the whole instrument, its subject-matter, the ease or difficulty of measuring the breach in damages, and the amount of the stipulated sum, not only as compared with the value of the subject of the contract, but in proportion to the probable consequences of the breach, and also to the intent of the parties ascertained from the instrument itself in the light of the particular facts surrounding the making and execution of the contract. *Jones v. Stevens* (1925), 112 Ohio St. 43, 146 N.E. 894, paragraph one of the syllabus. "Neither the parties' actual intention as to its validity nor their characterization of the term as one for liquidated damages or a penalty is significant in determining whether the term is valid." 3 Restatement of Contracts, supra, at 159, Section 356, Comment c. See *Samson Sales, Inc. v. Honeywell, Inc.* (1984), 12 Ohio St.3d 27, 28, 12 OBR 23, 24, 465 N.E.2d 392, 394. Thus, when a stipulated damages provision is challenged, the court must step back and examine it in light of what the parties knew at the time the contract was formed and in light of an estimate of the actual damages caused by the breach. If the provision was reasonable at the time of formation and it bears a reasonable (not necessarily exact) relation to actual damages, the provision will be enforced. See 3 Restatement of Contracts, supra, at 157, Section 356(1).

**{¶72}**   *Lake Ridge Academy, supra,* at 381–82, 613 N.E.2d at188.

**{¶73}**   In the instant case, the trial court did not apply the test set forth by the Ohio Supreme Court in *Lake Ridge Academy, supra* and *Samson Sales, supra,* nor did it step

back and examine the liquidated damages provision in light of what the parties knew at the time the contract was formed. Rather, the trial court based its evaluation of damages on its conclusion the only potential violation of the deed restrictions by CDC in this case was the water and surface lease agreement under which Devon withdrew water from the ponds on the property, an amount of water the court classified as de minimis. As we have found multiple violations by CDC of the deed restrictions and have found the actions of Devon were more than de minimis, we find the trial court's analysis was flawed.

**{¶74}** R.C. 164.26(A) specifically requires liquidated damages, stating, "The policies shall provide for proper liquidated damages and grant repayment for entities that fail to comply with the long-term ownership or control requirements established under this division." This statute appears to reflect a legislative determination the amount of damages for violation of the use and transfer restrictions, designed to further the public policy expressed by the electorate of the State in enacting the constitutional amendment pursuant to which CDC received grant money in the instant case, are difficult to ascertain as to amount and difficult to prove. We find the trial court did not apply the appropriate test concerning liquidated damages at the time the agreement was entered, and improperly limited its analysis to CDC's contract with Devon (which it erroneously held did not violate the use restriction) instead of all the use and transfer restriction violations identified supra.

**{¶75}** The third assignment of error is sustained.

Cross-Appeal I.

**{¶76}** On cross-appeal, Devon argues the trial court erred in granting CDC's motion for summary judgment on its cross-claim for defense and indemnification pursuant to the Water and Surface Use Agreement it entered with CDC.

**{¶77}** We note at the outset because OPWC has abandoned its claim for monetary damages against Devon, the issue on cross-appeal concerns only CDC's contractual duty to defend Devon in the instant action, as indemnification is no longer at issue.

**{¶78}** The relevant clause in the First Water and Surface Use Agreement entered into by CDC and Devon provides:

5. LANDOWNER AGREES TO HEREBY FOREVER INDEMNIFY, RELEASE, ACQUIT, DISCHARGE, AND HOLD HARMLESS DEVON FROM ALL EXISTING AND FUTURE CLAIMS, DEMANDS, AND CAUSES OF ACTION, WHETHER KNOWN OR UNKNOWN, WHETHER BASED ON TORT (INCLUDING STRICT LIABILITY), CONTRACT, OR STATUTORY LAW, WHETHER GOVERNED BY FEDERAL, STATE, TRIBAL, OR LOCAL LAWS, RULES, OR ORDINANCES, THAT HAVE BEEN BROUGHT OR THAT COULD HAVE BEEN BROUGHT IN ANY COURT, TRIBUNAL, OR FORUM, IN THIS OR ANY OTHER JURISDICTION, THAT RELATE TO OR ARISE FROM (A) DAMAGES TO THE PONDS CAUSED BY THE OPERATIONS, OR (B) PERSONAL INJURY OR DEATH RESULTING FROM THE PONDS OR THE CONTENTS OF THE PONDS

BEING USED FOR PURPOSES NOT PERMITTED BY PARAGRAPH 5 OF

THIS AGREEMENT.

**{¶79}**   The trial court found the cross-claim brought by OPWC against Devon did

not fall within the terms of this clause as a matter of law, as the claim was not for damage

to the ponds or personal injury or death.   We disagree.   Given the broad language

concerning actions arising in tort, contract, or pursuant to statute, we find the instant

action, based on the contract between Devon and CDC allowing damage to the ponds,

fell within the scope of this clause.   It is clear, OPWC was initially seeking monetary

damages from Devon.

**{¶80}**   CDC argues this clause is no longer in effect due to the second agreement

entered between the parties, which states in pertinent part:

> This Agreement represents the entire agreement between the
> Parties relating to the subject matter hereof and supersedes any prior
> agreements, representations, or statements, oral or written, relating to the
> subject matter of this Agreement.

**{¶81}**   This second agreement did not include an indemnification clause.

**{¶82}**   However, at the same time the parties entered the second agreement, they

also amended the first agreement.   The amendment specifically changed the phrase

"paragraph 5" in the last line of the indemnification clause cited above to "paragraph 4" to

correct a typographical error in the first agreement.   The amendment provides in pertinent

part, "Except as hereby amended, all other terms and conditions of the Agreement shall remain in full force and effect as presently written."

**{¶83}** We find because the second agreement did not specifically address or otherwise eliminate the indemnification clause, the language in the amendment to the first agreement, "all other terms and conditions of the [first] Agreement shall remain in full force and effect as presently written" controls. Accordingly, we find the indemnification clause remains valid and enforceable.

**{¶84}** Finally, CDC argues the above cited language does not include a duty to defend. Although Devon argues CDC raises this issue for the first time on appeal, CDC raised this issue in a footnote in their reply to Devon's motion for partial summary judgment on this issue, filed September 17, 2019, noting the word "defend" is not utilized in Paragraph 5 of the first agreement.

**{¶85}** In the insurance arena, the duty to provide a defense to an insured under an insurance contract is separate and distinct from the duty to pay a judgment or an award of costs against the insured. *Pasco v. State Auto. Mut. Ins. Co.*, 10th Dist. Franklin No. 04AP-696, 2005-Ohio-2387, ¶15. The language in the indemnification clause in the first agreement does not include a duty to defend. Because the duty of a defense is separate from the duty to indemnify, and the contract between the parties did not provide for a right to a defense but only to indemnification, CDC was not contractually obligated to provide a defense to Devon, and the trial court did not err in granting CDC's motion for summary judgment on Devon's cross-claim.

**{¶86}** The assignment of error on cross-appeal is overruled.

**{¶87}** The judgment of the Guernsey County Court of Common Pleas, granting the summary judgment motions of CDC, Siltstone, Devon, and Patriot, and the motions for judgment on the pleadings of Gulfport, Synergy, and Whispering Pines, thereby dismissing OPWC's counterclaims and crossclaims, is reversed. Pursuant to App. R. 12(B), we hereby enter final judgment granting OPWC's motion for partial summary judgment. The judgment of the Guernsey County Common Pleas Court granting CDC's motion for summary judgment dismissing Devon's cross-claim against CDC is affirmed. This cause is remanded for further proceedings consistent with this opinion.

By: Hoffman, P.J.
Wise, John, J. and
Wise, Earle, J. concur

IN THE COURT OF APPEALS FOR GUERNSEY COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| SILSTONE SERVICES, LLC | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| THE GUERNSEY COUNTY | : | |
| COMMUNITY DEVELOPMENT | : | |
| CORPORATION, et al., | : | Case No. 19CA000047 |
| | : | |
| Defendants-Appellees | : | |
| | : | |
| And | : | |
| | : | |
| OHIO PUBLIC WORKS COMMISSION | : | |
| | : | |
| Defendants-Appellants | : | |
| | : | |
| And | : | |
| | : | |
| DEVON ENERGY PRODUCTION | : | |
| COMPANY, LP | : | |
| | : | |
| Defendant-Appellee- | : | |
| Cross-Appellant | : | |

The judgment of the Guernsey County Court of Common Pleas, granting the summary judgment motions of CDC, Siltstone, Devon, and Patriot, and the motions for judgment on the pleadings of Gulfport, Synergy, and Whispering Pines, thereby dismissing OPWC's counterclaims and crossclaims, is reversed.  Pursuant to App. R. 12(B), we hereby enter final judgment granting OPWC's motion for partial summary

judgment.  The judgment of the Guernsey County Common Pleas Court granting CDC's motion for summary judgment dismissing Devon's cross-claim against CDC is affirmed.  This cause is remanded for further proceedings consistent with this opinion.  Costs of OPWC's direct appeal are assessed to CDC.  Costs of the cross appeal are assessed to Devon.